UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SABAL TRAIL TRANSMISSION,
LLC,

   *Plaintiff*,

v.          Case No. 1:16cv93-MW/GRJ

+/- 18.27 ACRES OF LAND IN
LEVY COUNTY, FLORIDA, et al.,

   *Defendants.*
_____/

## ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT

  This is an eminent domain case. Over a year has passed since this Court granted Plaintiff's Motion for Partial Summary Judgment, ECF No. 38, as to Plaintiff's right to condemn an easement through Defendants' property to build a natural gas pipeline. Since then, Plaintiff took possession of the subject property. Pipeline construction began and ended. And now Plaintiff must compensate Defendants for the taking.

  Plaintiff's activities understandably caused significant heartburn for Defendants. One Defendant described the "continued intrusion" on the property, including Plaintiff's practice of "fly[ing] the damn helicopter over there," and "people coming in . . . unannounced." ECF No. 70-10 at 82. This Defendant also worried about the fact that Plaintiff put the pipeline in the

1

ground "less than a football field" away from his children's bedroom windows. *Id.* at 90.

Pipeline construction presented other challenges for Defendants. Most importantly, for purposes of this Order, is the fact that during the past year Plaintiff's activities (1) destroyed several mature live oak trees on the property during the construction process, (2) prevented Defendants from leasing pasture to cattle farmers, and (3) prevented Defendants from planting more profitable crops in accordance with their farm's normal rotation. This Court has considered, without hearing, Plaintiff's Motion for Partial Summary Judgment, ECF No. 65, to determine whether these kinds of losses may be compensated—that is, whether a jury may consider evidence of these losses in reaching its determination of "full compensation." Based on the reasons stated below, Plaintiff's motion is **GRANTED** in part and **DENIED** in part.

I

The Natural Gas Act adopts Florida substantive law as the federal measure of compensation in this case. *Sabal Trail Transmission, LLC v. Real Estate*, Case No. 1:16cv63-MW/GRJ, 2017 WL 2783995, at *6 (N.D. Fla. June 27, 2017). Florida's Constitution provides that "[n]o private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner." Fla. Const., art. X, § 6(a). Full compensation "must be determined

by reference to the state of affairs that would have existed absent any condemnation proceeding whatsoever." *Fla. Dep't of Revenue v. Orange Cty.*, 620 So. 2d 991, 992 (Fla. 1993). "[A]ll evidence relevant to the issue of full compensation is admissible in eminent domain proceedings." *Fla. Power & Light v. Jennings*, 518 So. 2d 895, 895 (Fla. 1987). But "[t]he constitutional right to receive full compensation under eminent domain is not a right to receive general damages." *Dep't of Agr. and Consumer Servs. v. Mid-Florida Growers, Inc.*, 570 So. 2d 892, 899 (Fla. 1990).

"When an injury is to land and the injury is of a more or less permanent nature, the usual measure of damages is the difference between the value of the land before and after the injury." *Atl. Coast Line R. Co. v. Saffold*, 178 So. 288, 602 (Fla. 1938). And when less than the entire property is taken, "full compensation" for the taking "consists of the value of the property taken and severance damages to the remainder caused by the taking, if any." *Partyka v. Fla. Dep't of Transp.*, 606 So.2d 495, 496 (Fla. 4th DCA 1992) (citing Fla. Stat. § 73.071(2), (3)(a), & (b)). Importantly, though, the Florida Supreme Court notes that aside from the usual measure of damages, courts should "tak[e] into account all facts and circumstances which bear a reasonable relationship to the loss occasioned the owner by virtue of the taking of his property." *Jacksonville Expressway Auth. v. Henry G. Du Pree Co.*, 108 So. 2d 289, 291 (Fla. 1958).

"In calculating the damage to the remaining property, Florida courts have adhered to a 'before and after' rule under which severance damages are calculated as the difference between the value of the property before and after the taking." *Fla. Dep't of Transp. v. Armadillo Partners, Inc.*, 849 So.2d 279, 283 (Fla. 2003). And "[t]he burden of proof of a claim for severance damages is on the condemnee." *Division of Admin., State of Fla. Dep't of Transp. v. Frenchman, Inc.*, 476 So. 2d 224, 226 (Fla. 4th DCA 1985).

"As to intangibles, business damages and lost profits are not included in . . . full compensation." *Fla. Dep't of Revenue v. A. Duda & Sons, Inc.*, 608 So. 2d 881, 885 (Fla. 5th DCA 1992). "Severance damages and business damages are interrelated but not identical concepts." *Seminole Cty. v. Sanford Court Inv'rs, Ltd.*, 743 So. 2d 1165, 1170 (Fla. 5th DCA 1999). "The purpose of awarding business damages in an eminent domain proceeding is to mitigate the hardship suffered by a business when the taking of only a portion of property reduces the value associated with the location of the business." *Id.* at 1168.

"The payment of compensation for intangible losses and incidental or consequential damages . . . is not required by the constitution, but is granted or withheld simply as a matter of legislative grace." *Tampa-Hillsborough Cty. Expressway Auth. V. K.E. Morris Alignment Serv., Inc.*, 444 So. 2d 926, 928 (Fla. 1983). Thus, an owner may recover business damages only by statute. *Id.*;

4

*see also* Fla. Stat. § 73.071 (3)(b). Section 73.071(3)(b) limits such recovery to cases involving a partial taking which causes damage to or destroys "an established business of more than 5 years' standing . . . owned by the party whose lands are being so taken, located upon adjoining lands owned or held by such party, the probable damages to such business which the denial of the use of the property so taken may reasonably cause."

In this case, Defendants have not sought business damages. *See* ECF No. 72 at 20. Nor have they plead such damages pursuant to statutory requirements. *See* Fla. Stat. § 73.071(3)(b) ("[A]ny person claiming the right to recover such special damages shall set forth in his or her written defenses the nature and extent of such damages."). This Court simply notes the difference between constitutionally required severance damages and statutorily available business damages to aid in its analysis—but more on that later.

II

A

To start, Defendants assert they're entitled to compensation for the value of several mature live oak trees that Plaintiff cut down in order to build the pipeline. "Standing or growing timber, and trees generally, form a part of the realty, and belong to the owner thereof, as much so as to the soil itself." 98 C.J.S. *Woods and Forests* § 2 (2017) (collecting cases). With respect to cultivated, fruit-bearing trees, the Florida Supreme Court has held that the

5

value of such trees as an improvement on the land may be considered to compensate for their loss. *McClelland v. Town of Eustis*, 102 So. 159, 273 (Fla. 1924). Trees may also be condemned separate and apart from the land; for example, in a condemnation proceeding to cut down "danger trees" near a right of way for an electric power transmission line. *Florida Power Corp. v. Wenzel*, 113 So. 2d 747 (Fla. 2d DCA 1959). And while standing trees are considered part of the land itself, potted trees may be condemned as personal property, and full compensation is owed for their destruction even if the land upon which they're located is not taken. *See Mid-Florida Growers, Inc.*, 570 So. 2d 892.

In this case, the live oak trees at issue were not valued for their fruit, nor did Defendants actively cultivate them. The trees were not personal property—they were part of the land itself. Defendants prized the trees for their sentimental and aesthetic qualities, and may be entitled to compensation for their loss only if Defendants can prove they're entitled to severance damages resulting from a reduction in value of the remaining property after the trees were removed for pipeline construction. Accordingly, Defendants are not entitled to compensation based on the separate appraisal value for each tree.

Plaintiff's partial summary judgment motion is therefore **GRANTED** as to whether Plaintiff must compensate Defendants for the lost trees based on the separate appraisal value of each tree. However, a jury may hear evidence

of severance damages based on the lost trees' impact on the value of the remainder. Additionally, this Court reserves ruling on the admissibility of evidence of replacement costs to cure any severance damages unless and until Defendants introduce evidence of severance damages at trial. *Div. of Admin., State of Fla. Dep't of Transp. v. Frenchman, Inc.*, 476 So. 2d 224, 228 (Fla. 4th DCA 1985) (noting "it was error to admit testimony on the cost of cure," when the defendant "did not first present evidence that it had sustained severance damages").

B

Next, Defendants assert they're entitled to compensation for the value of lost grazing leases. Ordinarily, Defendants lease "[i]dle land . . . to cattle farmers in the late fall and winter as permanent pastures become dormant." ECF No. 70-12 at 3. But pipeline construction on Plaintiff's easement prevented Defendants from renting one of their parcels for this purpose. Plaintiff contends this sort of loss falls within the category of "business damages" not properly compensable in this action. But Defendants assert this loss ought to be included in the measure of full compensation in light of the facts and circumstances of this case.

In some cases, rental income is considered a kind of business damages. The Fourth District Court of Appeal considered the question of lost rental income in the context of an eminent domain proceeding against a trailer park.

7

*See Div. of Admin., State of Fla. Dep't of Transp. v. Ness Trailer Park Inc., et al.*, 489 So. 2d 1172 (Fla. 4th DCA 1986) ("*Ness*"). In *Ness*, the court affirmed the trailer park's compensation award which included severance damages and business damages for lost rental income. The court concluded that the trailer park's lost rental income properly qualified as business damages because it represented "a loss of income from a business conducted [on the affected property]." *Id*. In so holding, the court distinguished the facts in *Ness* from other cases holding that lost income based on the value of annual crops is not a proper basis for business damages. The court noted:

> [N]o law . . . puts rental income in a class with value of annual crops when a property is used for agriculture, as income derived from the use of the property itself . . . [is] not a proper basis for business damages. From another perspective, it could be reasoned in the instant case that if, as was apparently the case, the mobile homes were not affixed to the land so as to be regarded as real estate improvements, rental income was at least in part generated from other than use of the land itself.

*Id*.

In distinguishing between lost rental income and lost income based on the value of annual crops, the court apparently relied on a distinction in Florida law "between income from the land and income from a business conducted upon the land." *Lee County v. T&H Assocs., Ltd.*, 395 So. 2d 557, 560 (Fla. 2d DCA 1981).

The analysis in *Lee County* is instructive. In that case, the Second District Court of Appeal affirmed a compensation award in an eminent domain

8

suit that included lost revenue for a watermelon crop that wasn't permitted to mature. Citing Florida's business damages statute, the condemnor argued that the trial court erred by improperly allowing the jury to consider business damages when it admitted evidence of prospective profits of the melons had the melons made it to harvest. But the court on appeal rejected this argument, noting that "growing unmatured crops stand on a different footing," than "commercial business establishments." 395 So. 2d at 560.

Essentially, the court held that a jury could properly consider evidence of lost revenue for the watermelon crop that never made it to market as a component of "full compensation" for the value of the land that was taken. The court found that lost income based on the value of the growing watermelons did not fall within the limits of Florida's business damages statute, for "in the case of growing crops[,] the [prospective] revenue comes from the property itself rather than from a business operated at a particular location." *Id*.

Moreover, this lost income wasn't adequately captured by the fair market value approach that serves as a starting point for measuring "full compensation." Nonetheless, the leaseholders were still constitutionally entitled to compensation for this lost income. *See id.* ("Here, there was no market for the leaseholds with the watermelons in a partial state of development. In order to arrive at 'full compensation,' it was necessary to consider other evidence bearing on the value."). The court concluded that the

evidence admitted "was at least as probative as that submitted by the county, which would simply reimburse the defendants for out-of-pocket costs and totally ignore their efforts in successfully bringing the crops to the stage of maturity they occupied when the land was taken." *Id*.

Now, in this case, Plaintiff moves for summary judgment as to whether "full compensation" may include the value of lost grazing leases from the season when pipeline construction prevented Defendants from renting out a certain parcel. At first blush, Defendants' claim for lost grazing leases mirrors the trailer park's claim for lost rental income in *Ness*. If this Court were to end its analysis here and find that the value of such leases amounts to business damages not properly compensable in this case, it would certainly satisfy Plaintiff. But this would be an incorrect application of Florida law.

While the court in *Ness* held that rental income was compensable as a component of the trailer park's business damages, it did so only by establishing that such income was "generated from other than use of the land itself." 489 So. 2d at 1181. In *Ness*, the lost rental income fit squarely within the box for "income from a business conducted upon the land," as opposed to "income from the land." *Lee County*, 395 So. 2d at 560. But in this case, the value of Defendants' lost grazing leases derives directly from use of the land itself, much like the value of the lost watermelon crop in *Lee County*. This value is not adequately captured by the usual measure of fair market value.

Defendants' expert estimates that Defendants were actually unable to lease 274 acres for grazing at a rate of $75 per acre, amounting to a loss of $20,550. ECF No. 70-12 at 8. Defendants would have rented this idle land "absent any condemnation proceeding whatsoever." *Fla. Dep't of Revenue*, 620 So. 2d at 992. But because Plaintiff's easement cut through the affected parcel, Defendants could not lease the property for grazing during the construction period. Therefore, "taking into account all facts and circumstances which bear a reasonable relationship to the loss occasioned the owner by virtue of the taking of his property," this Court finds that "full compensation" may include consideration of the value of Defendants' lost grazing leases. *Henry G. Du Pree Co.*, 108 So. 2d at 291. Plaintiff's motion for partial summary judgment, ECF No. 65, is **DENIED** as to the issue of lost grazing leases.

C

Lastly, Plaintiff seeks summary judgment as to whether the measure of full compensation includes losses occasioned by the taking's disruption of Defendants' ordinary crop rotation in 2017. Defendants assert Plaintiff's construction activity on their easement forced Defendants to plant a less profitable crop (peanuts) on some of their affected property instead of the more profitable crop (watermelon) that they had expected to plant in 2017. Plaintiff again asserts this is an intangible loss of profits that falls within the category of business damages not properly compensable in this action. But Defendants

11

contend this loss is compensable though not adequately captured by measuring the fair market value of the property. This Court agrees with Defendants that evidence of this actual loss occasioned by Plaintiff's taking, which interfered with Defendants' ordinary crop rotation and reduced their income for the 2017 growing season, should be presented to a jury determining the measure of full compensation in this case.

As a preliminary matter, Defendants assert Plaintiff is estopped from refusing to compensate them for the interruption of their farming operations based on certain assurances Plaintiff made to the Federal Energy Regulatory Commission during the application process for its Certificate of Public Convenience and Necessity. But Plaintiff correctly points out that such a counterclaim or defense is not properly before this Court. Defendants failed to raise promissory estoppel in its answer. Federal Rule of Civil Procedure 71(e)(3) states in part that "[a] defendant waives all objections and defenses not stated in its answer." Moreover, "[n]o other pleading or motion asserting an additional objection or defense is allowed." Fed. R. Civ. P. 71(e)(3). And federal courts have routinely held that they lack jurisdiction to hear counterclaims in eminent domain proceedings. *See United States v. 38.60 Acres of Land, More or Less, Situate in Henry Cty., State of Mo.*, 625 F. 2d 196, 199 (8th Cir. 1980); *Kansas Pipeline Co. v. Herbert F. Landwehr, et al.*, 210 F. Supp. 2d 1253, 1258 (D. Kan. 2002). To the extent Defendants raise promissory

estoppel as an additional defense, it has waived the argument. And to the extent Defendants raise a counterclaim under the doctrine of promissory estoppel, this Court lacks jurisdiction to entertain such a claim in this proceeding. But this is not the end of the road for Defendants.

Apparently losing sight of this Court's prior ruling that Florida substantive law governs in this case, Plaintiff cites at length to federal law for the proposition that a condemning authority "must pay only for what it takes, not for opportunities which the owner may lose." ECF No. 65 at 8 (quoting *U.S. ex rel and for Use of Tenn. Valley Auth. v. Powelson*, 319 U.S. 266, 281-82 (1943)). Though, as Defendants accurately point out, several of Plaintiff's cited cases prohibited compensation for lost opportunities or lost profits largely because evidence of such losses was too speculative. This Court is not persuaded by Plaintiff's argument for three reasons. First, Florida's measure of "full compensation," not federal law, applies in this case. Second, Defendants' asserted losses are not "business damages." And third, Defendants' 2017 crop-income losses are not speculative in the least. Instead, they represent Defendants' actual losses caused by Plaintiff's taking.

"Full compensation" means full compensation. Florida courts state over and over that the natural starting point for measuring full compensation is the fair market value of the land taken. But that's not the be-all and end-all consideration. "The theory and spirit of [constitutionally guaranteed full

13

compensation] require a practical attempt to make the owner whole." *Henry G. Du Pree Co.*, 108 So. 2d at 292 (affirming compensation for actual cost of moving personal property after finding such constitutionally guaranteed and not too speculative for consideration). And it bears repeating that full compensation depends upon the facts and circumstances of each case.

The facts and circumstances of *this* case demand consideration of Defendants' crop-income losses for the 2017 season occasioned by Plaintiff's construction activities. Despite Plaintiff's argument to the contrary, these losses are not "business damages." Like the grazing leases discussed above, these losses encompass income produced from the land itself rather than income generated from a business conducted on the land. *See Polk County v. Grooms*, 625 So.2d 1249 (Fla. 2d DCA 1993). Nonetheless, these losses aren't adequately captured by estimating the fair market value of the land, though they still ought to be considered in order to make Defendants whole.

Defendants ordinarily would have grown watermelons on all the fields at issue had Plaintiff not taken the easement and commenced pipeline construction. Importantly, this crop was not chosen on a whim—it was part of Defendants' plan to manage the health of their land's soil in an effort to prevent crop disease. ECF No. 70-10 at 29, 32. But Plaintiff's easement essentially bisects one of the fields intended for watermelons. ECF No. 70-12 at 3. Pipeline

construction on this parcel prevented Defendants from laying irrigation necessary to grow watermelons in 2017. *Id.*

Despite this obstacle, Defendants did not sit on their hands and rack up their potential losses during the 2017 growing season. Instead, they mitigated their losses by planting watermelons where they could and peanuts where watermelons weren't feasible. Comparing net income from an undisturbed watermelon season (which includes expected income from grazing leases) with the income actually realized in 2017, Defendants' expert estimates losses amounting to $457,152. ECF No. 70-12 at 8.

These numbers are not in the least speculative. They are grounded in the fact that Defendants actually planted and harvested watermelons in 2017. As the court noted in *Lee County*:

> Theoretically, the value of the property at the time of the taking ought to reflect both the promise and the risk inherent in the growing of the crops based upon past experience rather than events which have not yet occurred. But recitation of what actually happened in the market and of the weather conditions which actually prevailed is in this instance the best possible evidence available. It *removes from doubt any speculation over what the market might be*, and it takes into consideration whether the crop would have survived the balance of the winter.

*Lee County*, 395 So. 2d at 560-61 (emphasis added). A jury ought to be able to consider this evidence in order to reach its determination of full compensation.

This Court notes that the condemning authority in this case is a private entity. This private entity, privileged with the power of eminent domain, has

decreased the value of Defendants' land. Not only must Defendants now have to contend with the fact that a natural gas pipeline crosses their farm, they also had to cope with pipeline construction itself—a process that threw a wrench in Defendants' farming plans for the 2017 growing season. Had Defendants' land not been taken in the first place, they would have planted all their affected fields with watermelon in early 2017 and earned a higher net income as a result. Plaintiff's suggestion that Defendants ought to just eat this loss is contrary to the letter and the spirit of Florida's "full compensation" requirement in eminent domain proceedings. In making Defendants whole, a jury should hear evidence of this loss. Accordingly, Plaintiff's summary-judgment motion is **DENIED** as to the issue of crop-income losses.

III

For these reasons,

**IT IS ORDERED:**

1. Plaintiff's motion for partial summary judgment, ECF No. 65, is **GRANTED** to the extent Defendants seek compensation for the separate appraisal value of each tree. But Defendants may present evidence of severance damages resulting from the loss of the subject trees.

2. The balance of Plaintiff's motion, ECF 65, is **DENIED**. A jury may consider evidence of lost grazing leases and watermelon crop income losses in determining full compensation.

3. This Court understands its ruling might cause some issues as it relates to the parties' appraisals or expert opinions as they currently stand. For this reason, this Court will entertain a motion to reopen discovery for the limited purpose of addressing those issues raised by this Order. Any motion to reopen discovery must be filed on or before Monday, December 4, 2017. If a motion to reopen discovery is opposed, an expedited response is due on or before Monday, December 11, 2017.

**SO ORDERED on November 15, 2017.**

                                        **s/Mark E. Walker**
                                        **United States District Judge**