# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

SABAL TRAIL
TRANSMISSION, LLC,

    *Plaintiff,*

v.                                          **Case No.: 1:16cv93-MW/GRJ**

18.27 ACRES OF LAND
IN LEVY COUNTY, et al.,

    *Defendants.*

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR ATTORNEY'S FEES AND COSTS[1]

This Court previously held that state substantive law governs the measure of compensation in eminent domain cases brought by private parties against private property owners under the Natural Gas Act. Accordingly, Florida's full compensation measure applies here, which includes reasonable attorney's fees. *See*

---

[1] This Court recognizes that this Order coming from this judge is unusual for two reasons; namely, because this Court did not handle the trial in this case—rather Judge Huck from the Southern District of Florida presided over the trial—and because, typically, fee motions are referred to magistrate judges in other divisions within this District and in other district courts. But while this Court did not sit in the trial for this case, it did handle the pretrial litigation—including the determination of the measure of compensation, motions in limine, and *Daubert* motions—and post-trial litigation, including the motion for new trial. Accordingly, this Court is well-versed on the disputed issues, what transpired at trial, and the attorneys' efforts in litigating this case. In addition, consistent with longstanding tradition in the Tallahassee Division initiated by Judge Hinkle, this Court directly addresses fee motions rather than refer them to a magistrate judge. This Court acknowledges that this tradition is somewhat unique to this Division; however, this Court has a bird's eye view of the case, which assists in the orderly and efficient resolution of the issues, obviating the need to refer the matter to a magistrate judge.

Art. X, § 6(a), Fla. Const. ("No private property shall be taken except for a public purpose and with *full* compensation therefor paid to each owner . . . .") (emphasis added); *Joseph B. Doerr Trust v. Cent. Fla. Expressway Auth.*, 177 So. 3d 1209, 1215 (Fla. 2015) (holding that it is "fundamentally clear" that the definition of full compensation under Florida's Constitution includes reasonable attorney's fees (citations omitted)).

Several courts have reached the same conclusion—that state substantive law governs the measure of compensation—both before and after this Court conducted its analysis. *See, e.g.*, *Tenn. Gas Pipeline Co., LLC v. Permanent Easement*, 931 F.3d 237 (3d Cir. 2019); *Columbia Gas Transmission Corp. v. Exclusive Nat. Gas Storage Easement*, 962 F.2d 1192 (6th Cir. 1992); *Sabal Trail Transmission LLC v. Real Estate*, 2018 WL 2305768 (M.D. Ga. May 21, 2018); *Equitrans LP v. Real Estate*, 2017 WL 1455023 (N.D.W.V. Apr. 21, 2017).

Without waiving its argument that this Court decided this issue incorrectly, Plaintiff challenges Defendants' motion for costs and fees, asserting, among other things, that Defendants improperly seek additional fees beyond the "benefits-achieved" amount allowed under Florida law, and that federal law—not Florida law—provides the governing standard for awarding reasonable costs.[2] This Court

---

[2] Plaintiff reserves the right to appeal this Court's determination of entitlement to attorney's fees and costs. *See* ECF No. 290 at 1 n.1.

will address fees and costs in turn, beginning with a discussion of how Florida law determines the amount of attorney's fees as a component of "full compensation" pursuant to section 73.092, Florida Statutes, and the amount of fees to which Defendants are entitled.

## I. "Benefits Achieved" Fee Award under § 73.092(1), Fla. Stat.

In eminent domain proceedings, Florida law provides "the measure to set an award of fees based solely on the benefits achieved for the client." *City of North Miami Beach v. Reed*, 863 So. 2d 351, 354 (Fla. 5th DCA 2003) (internal quotation marks omitted). Section 73.092(1)(a) defines "benefits" as "the difference, exclusive of interest, between the final judgment or settlement and the last written offer made by the condemning authority before the defendant hires an attorney." § 73.092(1)(a), Fla. Stat. The statute sets a sliding scale, taking into consideration the "benefits achieved," to calculate attorney's fees. Eligible fee awards include 33% of any benefit up to $250,000, plus 25% of any portion of the benefit between $250,000 and $1 million. *See* § 73.092(1)(c)1.-2., Fla. Stat.

"Section 73.092 is intended to promote settlements and deter litigation." *Seminole Cnty. v. Coral Gables Fed. Sav. & Loan Ass'n*, 691 So. 2d 614, 615 (Fla. 5th DCA 1997). Accordingly, when "the condemning authority acknowledges there has been a taking from the outset," it may preserve a statutory right to *limit* the landowner's attorney's fee award by making a written offer of settlement. *Reed*, 863

3

So. 2d at 354. Thus, the higher the last written offer of settlement relative to the final judgment, the lower the potential "benefit" and resulting fee award.

Finally, additional fees may be awarded in cases where the opposing party has dragged the property owner through "excessive litigation." *See Doerr*, 177 So. 3d at 1219 (holding that "when a condemning authority engages in tactics that cause excessive litigation, section 73.09(2) shall be used separately and additionally to calculate a reasonable attorney's fee for the hours expended which are attributable to defending against the excessive litigation or actions"). However, this is not Defendants' position. ECF No. 283 at 21-27.

As an initial matter, the parties have agreed upon the calculation, based on the statutory sliding scale, and **the amount of "benefits achieved" fees totaling $220,391**. This is based on a benefit achieved totaling $801,564 (the difference between the final judgment of $861,264 and the last written offer before Defendants hired an attorney of $59,700). Applying the statutory sliding scale to this "benefit achieved" yields $82,500 (33% of $250,000) plus $137,891 (25% of ($801,564 - $250,000 = $551,564)) for a total "benefits achieved" fee award of $220,391. *See* ECF No. 281 at 3 n.1. Accordingly, based on the parties' agreement and the application of section 73.092(1)(c), Florida Statutes, Defendants' motion, ECF No. 283, is **GRANTED** as to the amount of "benefits achieved" attorney's fees totaling **$220,391** as a component of Defendants' full compensation.

This Court will not pass on the issue of whether Defendants are entitled to additional fees under section 73.092(2) due to "excessive litigation," because Defendants do not claim to have been the victims of such tactics. Instead, as will be explained in more detail below, Defendants seek to squeeze this exception to the statutory percentage cap on fees into a different box with a different label, claiming they are entitled to fees for "supplemental proceedings" that were actually just a part of the original action. This Court is impelled to reiterate that the corollary, under Florida law, to allowing attorney's fees in eminent domain proceedings is that the condemning authority has a statutory right to *limit* that recovery by engaging in good faith settlement negotiations and providing a written settlement offer. Section 73.092(1) applies in this case because Plaintiff made a written offer of settlement— effectively limiting the amount of fees Defendants can recover. As this Court has already explained, Defendants are entitled to fees based upon the "benefits achieved," which encompasses the success obtained in the original proceeding, and all work that Defendants put into litigating their case—including early matters regarding choice of law and whether this case would be tried by a jury. Such matters are not "supplemental proceedings." They are simply the natural result of Defendants' well-fought defense of this case.

## II. Pre-Trial "Supplemental Proceeding" Fees under § 73.092(2), Fla. Stat.

Aside from the "benefits achieved" award under section 73.092(1)(c), a landowner may also pursue "fees incurred in defeating an order of taking, or for apportionment, or *other supplemental proceedings*, *when not otherwise provided for* . . . ." § 73.092(2), Fla. Stat. (emphasis added). This is where the parties' agreement ends in this case. Defendants do not seek fees incurred for defeating an order of taking or for apportionment. Instead, Defendants seek additional fees for "pre-trial supplemental proceedings," totaling $27,610, and fees for "post-trial supplemental proceedings," totaling $84,107.50. Both amounts are the result of an hourly lodestar calculation taking into consideration factors set out in section 73.092(2).[3]

Defendants assert the "pre-trial supplemental proceedings" relate to counsel's work in successfully litigating two issues for their clients; namely, whether this case would proceed to trial before a commission or a jury, and whether federal or state substantive law controls the measure of compensation. ECF No. 281 at 4 n.2. Defendants note that when attorney's fees are incurred for required proceedings that do not result in a monetary benefit upon which to base a fee award, section 73.092(2)

---

[3] These factors include (1) the novelty, difficulty, and importance of the questions involved, (2) the skill employed by the attorney in conducting the cause, (3) the amount of money involved, (4) the responsibility incurred and fulfilled by the attorney, (5) the attorney's time and labor reasonably required to adequately represent the client in relation to the benefits resulting to the client, (6) the fee, or rate of fee, customarily charged for legal services of a comparable or similar nature, and (7) any attorney's fee award made under section 73.092(1). § 73.092(2)(a)-(g), Fla. Stat.

applies to determine the "reasonable amount of attorneys' [fees] for the primary fee or additional supplemental fees." ECF No. 283 at 22. Defendants claim the best support for their position that this pre-trial work is separately compensable is the language of section 73.092(2).

Plaintiff opposes any pre-trial fee award under section 73.092(2) on the basis that this pre-trial work is already accounted for under the "benefits achieved" award. Plaintiff argues that "supplemental proceedings" in eminent domain actions generally "occur post-judgment and address rights resulting from the judgment, such as apportionment of the compensation." ECF No. 290 at 9. Moreover, Plaintiff claims, the two pre-trial issues that Defendants rely on for an award of supplemental proceeding fees were a "fundamental part of the proceedings that led to the final order of taking," and thus are not additionally compensable. *Id.* (quoting *Sw. Fla. Water Mgmt. Dist. v. Shea*, 86 So. 3d 582, 585 (Fla. 2d DCA 2012). As alluded to earlier, this Court agrees with Plaintiff.

The question is whether pre-trial litigation in the original eminent domain action concerning the issue of trial by jury and the law governing the measure of compensation can be construed as "supplemental proceedings" for which fees are "not otherwise provided" under Chapter 73, Florida Statutes. The answer is no. To reach this answer, this Court looks to how Florida courts have interpreted this statute in determining what constitutes a "supplemental proceeding" under Chapter 73,

Florida Statutes. In so doing, and despite Defendants' urging, this Court will not interpret Florida law more broadly than the state courts which have already spoken on this issue.

First, Florida courts have routinely interpreted "supplemental proceedings" in the eminent domain context as those which generally "occur[] at the end of a proceeding, usually after a final judgment has been entered." *Shea*, 86 So. 3d at 584-85 (quoting *Fla. Dep't of Transp. v. Smithbilt Indus., Inc.*, 715 So. 2d 963, 967 (Fla. 2d DCA 1998)). In *Shea*, the Water Management District commenced an eminent domain proceeding, during which the property owners objected to the District's order of taking and requested a hearing on the matter. The parties ultimately settled on an amount for full compensation ahead of trial. The property owners then filed a motion for attorney's fees and asserted that their objection to the order of taking in the original action constituted a "supplemental proceeding," for which they were entitled to additional fees along with their "benefits achieved" fee award. The Court of Appeal rejected this argument, noting that "contesting the order of taking was a fundamental part of the proceedings that led to the final order of taking." *Id*. at 585. Finding that the property owners had already been fully compensated for fees based on their "benefits achieved" award, the court reversed the trial court's order awarding fees under section 73.092(2).

In other cases, Florida courts have found the supplemental proceeding provision applies in situations where attorney's fees are "not otherwise provided for" by law, even though they may not have been incurred in a separate or subsequent proceeding. For example, in *Smithbilt Industries*, the court held that while "[i]n normal usage, a supplemental proceeding occurs at the end of a proceeding," "in the absence of a successful offer of judgment or a written offer, . . . subsection (2) should be used to determine attorneys' fees in an eminent domain trial that is limited to the issue of business damages." 715 So. 2d at 967. In that case, unlike the circumstances before this Court, the condemning authority never made a written offer to settle; accordingly, the property owner was unable to recover any fees under the "benefits achieved" provision. *Id*. at 966 (noting section 73.092 "contains a gap because it contains no method to establish fees in the event that the condemning authority makes no written offer and the proceeding is not supplemental in nature"); *see also State, Dept. of Transp. v. ABS Props. P'ship*, 693 So. 2d 703 (Fla. 2d DCA 1997) (holding that trial court should have calculated fees based on factors set out in section 73.092(2) when condemning authority voluntarily dismissed eminent domain proceeding and the property owner was not otherwise entitled to "benefits achieved" fees).

Defendants point to *ABS Properties* in support of their position that the statutory language is broad in defining supplemental proceedings—or, rather, this

9

Court should broadly construe it. But this is a nonstarter. In *ABS Properties*, the court held that the language "when not otherwise provided for" was "broad enough to encompass" the specific facts of that case, which are entirely distinguishable from the case before this Court. *Id.* at 705. There, the Florida Department of Transportation ("DOT") initiated a condemnation action against the landowner as part of a project to widen a highway. After engaging in mediation and ultimately reaching a settlement agreement that permitted attorney's fees for the landowner that were capped at a percentage of the benefits received based on full compensation measuring $1.3 million, the deal fell apart when DOT postponed the project and voluntarily dismissed its case. The trial court awarded attorney's fees pursuant to the "benefits achieved" formula in section 73.092(1), but on appeal, the court held that section 73.092(2)'s provision for fees for supplemental proceedings "when not otherwise provided for" applied. The court concluded that section 73.092(1) clearly did not apply because the landowners' attorneys did not achieve any "benefits" due to DOT's decision to voluntarily dismiss the case. *Id.* at 704. Ultimately, the court concluded that attorney's fees were "not otherwise provided for" and reversed and remanded for the trial court to conduct an evidentiary hearing and lodestar analysis based on the factors set out in section 73.092(2).

Defendants also rely upon the Report and Recommendation in *Collier Cnty. v. RTG, LLC*, No. 2:17-cv-14-FtM-38CM, 2018 WL 5300200, *2-3 (M.D. Fla. Oct.

18, 2018), as another example of "required proceedings that are, in part, related to proceedings arising from the exercise of eminent domain, for which an owner was also required to engage in litigation with the condemnor." ECF No. 283 at 24 (internal quotation marks omitted). But again, Defendants' reliance is misplaced.

In *Collier County*, the County had previously sued a landlord and its tenant— Holiday CVS, LLC ("CVS")—in an eminent domain action for land to be used to expand an intersection. The taking included fourteen parking spaces that CVS used for customer parking, and ultimately led to CVS unilaterally terminating its lease with the property owner. The condemnees then claimed severance and business damages, and the case proceeded to a jury trial. A jury awarded several million dollars to the property owner and CVS for the taking and other damages, along with $1.5 million in attorney's fees and expert fees. The County never appealed the final judgment, and it paid the moneys in full. However, the County later filed a separate action against the condemnees for unjust enrichment, claiming the condemnees committed fraud on the court because CVS had yet to close its store. The condemnees removed the action to federal court, which subsequently dismissed it. Specifically, the district court noted that the second action was a collateral attack on the jury verdict in the eminent domain case and dismissed the case with prejudice. *See Collier Cnty. v. RTG, LLC*, No. 2:17-cv-14-FtM-38CM, 2017 WL 1318459 (M.D. Fla. Apr. 10, 2017) (order on the motion to dismiss).

Following dismissal, the condemnees moved for attorney's fees under section 73.092, Florida Statutes. *See* 2018 WL 5300200. The magistrate judge applied Florida law based on the invocation of the court's diversity jurisdiction and recommended awarding fees for a supplemental proceeding pursuant to section 73.092(2), rather than "benefits achieved" fees under 73.092(1). In so doing, the magistrate judge noted that "a supplemental proceeding [generally] occurs after a final judgment has been entered." *Id*. at *4 n.5. Moreover, "[b]ecause a final judgment was entered in the eminent domain case prior to the instant action, the parties evidently agree[d] this case constitute[d] a supplemental proceeding with the meaning of § 73.092(2)." *Id*. (internal quotation marks omitted).

Despite Defendants' reliance upon them, both *ABS Properties* and *Collier County* are distinguishable from this case. First, unlike the landowners in *ABS Properties*, Defendants have achieved a substantial benefit in this case—over $800,000—upon which their statutory fee award is based. An award for fees based on the success of Defendants' pre-trial litigation *is* "otherwise provided for"— indeed, it has already been provided for under section 73.092(1) and encompassed in the "benefits achieved" fee award. Moreover, while the *Collier County* case is an example of when section 73.092(2) properly applies—i.e., in a subsequent civil action collaterally attacking the jury verdict in an eminent domain proceeding—it does no good in advancing Defendants' position that the pre-trial litigation they

conducted in the original eminent domain proceeding here constitutes a supplemental proceeding for which they are entitled to additional fees beyond the "benefits achieved" award. The pre-trial work for which Defendants seek additional compensation was neither ancillary nor supplemental to the original eminent domain proceeding. Rather, determining whether to try the case before a jury and which law governs the measure of compensation were both "fundamental" to the original proceeding and led to the final judgment in this case.

For these reasons, Defendants cannot recover additional fees for pre-trial work that is already encompassed in the "benefits achieved" fee award. Litigating whether to try the case before a jury and which law governs the measure of compensation were not "supplemental proceedings" in this case. Rather, the work put into litigating those issues was simply what was required of Defendants to provide a competent defense to this action. Simply litigating pre-trial matters does not automatically transform that work into supplemental proceedings—nor, based on the absence of argument from Defendants on this point, does it automatically amount to excessive litigation. Accordingly, Defendants' motion for $27,610 of fees incurred for "pre-trial supplemental proceedings," is **DENIED**.

## III. Post-Trial "Supplemental Proceeding" Fees under § 73.092(2), Fla. Stat.

Defendants also seek $84,107.50 in attorney's fees incurred through "post-trial supplemental proceedings." ECF No. 283 at 3. These fees encompass, among

13

other things, work performed in defending against Plaintiff's motion for new trial, ECF No. 209, litigating the entitlement to fees and costs, litigating prejudgment interest, and defending against PNC Bank's motion to enjoin disbursement of the funds, ECF No. 242. *See, e.g.*, ECF No. 281-4 (post-trial supplemental proceeding time records). Without waiving its objection that Defendants are not entitled to attorney's fees at all, Plaintiff agrees to Defendants' request in part, but asks this Court to limit the recovery for post-trial supplemental proceedings by reducing both the amount of time spent on certain matters and the hourly rates for the attorneys doing the work. *See* ECF No. 290 at 19. Plaintiff seeks an overall reduction in post-trial fees under section 73.092(2) from $84,107.50 to $29,080. ECF No. 290 at 8.

Both sides agree, to an extent, that at least some of Defendants' post-trial work is compensable under section 73.092(2) as post-judgment "supplemental proceedings." The questions are what exactly is compensable, and what amount of fees this Court should award to Defendants.

As an initial matter, this Court agrees with Plaintiff that Defendants are not entitled to fees for work performed in defending against Plaintiff's motion for new trial, nor is Defendants' litigation relating to the joint motion to amend the judgment and motions for prejudgment interest properly considered compensable as "supplemental proceedings." Instead, like the pre-trial matters discussed above, these three matters are fundamental to the original proceeding, the final judgment in

this case, and the overall "benefits achieved," and have already been included in the "benefits achieved" fee award. Defendants have provided no authority to the contrary. Accordingly, Defendants' motion for fees is **DENIED in part** as it relates to amounts for work performed on the motion for new trial, motion to amend the judgment, and motions for prejudgment interest.

Next, this Court will address the method for calculating reasonable fees for post-trial supplemental proceedings before addressing Plaintiff's arguments for reducing fees for work that is compensable under section 73.092(2).

### A. Lodestar Method for Determining Reasonable Fees Under § 73.092(2), Fla. Stat.

Florida has adopted the lodestar method to determine the reasonableness of an award of attorney's fees under section 73.092(2), Florida Statutes. *State, Dep't of Transp. v. LaBelle Phoenix Corp.*, 696 So. 2d 947, 948 (Fla. 2d DCA 1997). This Court "must expressly determine the number of hours reasonably expended on the litigation and the reasonable hourly rate for the type of litigation involved." *Lee Cnty. v. Tohari*, 582 So. 2d 104, 105 (Fla. 2d DCA 1991) (citations omitted). "These two factors are then multiplied to determine the basic lodestar fee." *Id*. (citation omitted).

In computing the lodestar amount, this Court "shall consider" a number of factors, including (1) the novelty, difficulty, and importance of the questions involved, (2) the skill employed by the attorney conducting the case, (3) the amount of money involved, (4) the responsibility incurred and fulfilled by the attorney, (5)

the attorney's time and labor reasonably required adequately to represent the client in relation to the benefits resulting to the client, (6) the fee, or rate of fee, customarily charged for legal services of a comparable or similar nature, and (7) any attorney's fee award made under the "benefits achieved" provision in section 73.092(1). § 73.092(2)(a)-(g), Fla. Stat.

This Court begins with an analysis of the hourly rates that Defendants' attorneys seek. This Court then considers whether Defendants' submissions demonstrate that the number of hours claimed is reasonable. Finally, this Court considers whether the results in the case warrant adjustment of the lodestar figure based on the remaining factors set out in section 73.092(2).

### i. Reasonable Hourly Rates

The parties dispute whether Defendants' attorneys' rates for their work on post-trial supplemental proceedings are reasonable. Having considered this issue in depth in previous cases, this Court is familiar with the notion that a "reasonable hourly rate" is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Maner v. Linkan LLC*, 602 F. App'x 489, 493 (11th Cir. 2015) (unpublished) (quoting *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)). Moreover, section 73.092(2), Florida Statutes, similarly requires this Court to consider the fee, or rate of fee, customarily charged for legal services of a

comparable or similar nature when calculating fees for supplemental proceedings in an eminent domain case. § 73.092(2)(f), Fla. Stat. Finally, the Eleventh Circuit has recognized that this Court itself is an expert regarding the hourly rates charged in the local community. *Norman*, 836 F.2d at 1303.

The parties generally agree that the Northern District of Florida is the relevant market for purposes of comparing rates to those charged by lawyers of reasonably comparable skills, experience, and reputation. More specifically, Gainesville is the appropriate market, given that this dispute concerned land in the Gainesville Division of the Northern District of Florida, the case was filed in Gainesville, and the jury trial occurred in Gainesville. *See ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) ("The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's service is 'the place where the case is filed.' " (quoting *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994))).

Defendants seek the following hourly rates for the attorneys who worked on the post-trial supplemental proceedings: $450/hour for Andrew Prince Brigham, $350/hour for Trevor Hutson, $325/hour for E. Scott Copeland, and $275/hour for Chris C. Bucalo. ECF No. 280 at 13. Defendants have provided the Affidavit of Andrew Prince Brigham, setting out the relevant experience of the attorneys who

have requested the above-listed rates. *See* ECF No. 281 at 3-10; *see also* ECF No. 281-2. Defendants' attorneys' qualifications are as follows.

Mr. Brigham is a senior attorney with 29 years of experience primarily in representing property owners with property issues, including eminent domain cases. ECF No. 280 at 3. He has been lead counsel in at least 40 valuation jury trials in eminent domain, some of which involved record-high jury verdicts against DOT. *Id.* at 4-5. Mr. Brigham's experience extends to representing clients in condemnation actions related to both interstate and intrastate natural gas pipelines, as well as appellate work with at least eight reported opinions to his name. *Id.* at 5-6.

Mr. Hutson began practicing in 2013 and had about 2.5 years of experience at the commencement of this action in 2016. *Id.* at 8. As of the date of this order, he has nearly eight years of experience including two years working with landowners and developers on real estate development and planning issues and five years of experience in eminent domain and other property issues, including this case, a related Natural Gas Act case, a 2014 jury trial with Mr. Brigham, and a record-setting settlement with DOT in another eminent domain case. *Id.* at 8-9.

Mr. Copeland began practicing in 2015, with about a year of experience when this case was first filed. ECF No. 280 at 9. Prior to becoming a lawyer, Mr. Copeland earned a degree in Chemistry in 1993 and spent several years in church ministry. ECF No. 280-2 at 2. Mr. Copeland has spent essentially his entire time in practice

on property issues, including this case, the related Natural Gas Act case, and two jury trials with Mr. Brigham in 2016. ECF No. 280 at 9. As of the date of this order, Mr. Copeland has almost six years of experience in the practice of law, essentially all of which pertain to property rights and eminent domain.

Finally, Mr. Bucalo began practicing in 2018, in the middle of this litigation. ECF No. 280 at 10. He has spent essentially all his time in practice working on property issues, including this case, the related Natural Gas Act case, and a separate jury trial in 2018 involving DOT and the Wekiva Parkway. *Id*. As of the date of this order, Mr. Bucalo has almost three years of legal experience.

Defendants have also provided the declaration of Charles Stratton, an attorney with over 40 years of experience and who has practiced eminent domain law in Florida. ECF No. 277. Mr. Stratton opines that the hourly rates Defendants seek for tasks performed on supplemental proceedings are reasonable and well within the range of reasonable rates for this type of work in the Northern District of Florida. He attests that he has experience as the chief eminent domain attorney for DOT, followed by his entry into private practice and representation of property owners and condemning authorities at the trial-court and appellate levels. *Id*. at 2. Mr. Stratton now works in Tallahassee and charges his own hourly rate of $610. *Id*. at 3. Over the course of his 40+ years of practice, Mr. Stratton has handled "dozens" of trials and appeals throughout Florida, and attests to his familiarity with rates charged

throughout the Northern District of Florida. *Id.* at 2-3. Accordingly, I find Mr. Stratton well qualified to opine as to the reasonableness of Defendants' attorneys' proposed rates, as he has decades of experience in the area of eminent domain in the Northern District of Florida, including Gainesville, and knowledge of rates charged for similar services by lawyers of comparable skill, experience, and reputation.

Mr. Stratton opines that, based on his knowledge and experience, a survey he conducted of practitioners in the Northern District of Florida, and his review of Mr. Brigham's affidavit, he believes reasonable rates in the Northern District of Florida for associate attorneys with less than five years of experience range from $250 to $300, associates with greater than five years of experience range from $350 to $400, and senior attorneys range from $450 to $800. ECF No. 277 at 3-4. Mr. Stratton further opines that his review of the requested rates in this case are well within the range of reasonable fees with which Mr. Stratton is familiar. *Id.*[4]

Plaintiff objects to these rates, citing past decisions by this Court granting fee awards for rates only as high as $375/hour in Gainesville. Plaintiff asserts that Defendants rely on non-local rates for work performed throughout the state of

---

[4] Mr. Stratton opines that Mr. Brigham's fee of "$400" is reasonable. ECF No. 277 at 4. But this Court is operating with the understanding that Mr. Brigham has proposed a rate of $450/hour. Whether or not Mr. Stratton's declaration contains a scrivener's error or a misunderstanding as to the rate Mr. Brigham is seeking, this Court is not bound by his opinion. Moreover, Mr. Brigham's proposed rate of $450 is still well within the range of reasonable rates that Mr. Stratton opines are charged for senior attorneys in the Northern District of Florida, i.e., $450 to $800.

Florida, which do not reflect the reasonable rates associated with comparable work performed in Gainesville. Ultimately, Plaintiff asks this Court to cap the rates at $375/hour for Andrew Prince Brigham, $250/hour for Trevor Hutson, $200/hour for E. Scott Copeland, and $200/hour for Chris C. Bucalo.

In effect, Plaintiff is arguing that all reasonable hourly rates in Gainesville are capped at $375/hour, regardless of the nature of the services provided, the complexity of the issues, or the attorney's experience and reputation. This does not make sense, nor is it the law. Moreover, Plaintiff takes the untenable position that because Defendants' attorneys charge the same rates for work performed throughout Florida, these rates are automatically unreasonable in the Gainesville market. But just because an attorney charges $450/hour for similar work in Miami and Pensacola, or Key West and Live Oak, does not mean that hourly rate is unreasonable per se.[5]

Plaintiff's argument also implicitly ignores this Court's findings from another case that Plaintiff cites for other purposes. Specifically, in *Beta Upsilon Chi v. Machen*, No. 1:07cv135-MW/GRJ, 2014 WL 4928902, *1 (N.D. Fla. Oct. 1, 2014), this Court awarded $235,278.25 in district-level attorney's fees to the plaintiff in a First Amendment challenge to the University of Florida's refusal to grant the plaintiff status as a registered student organization. *Beta Upsilon Chi* did not involve

---

[5] Nor, for that matter, does it make a per se reasonable rate. Again, the relevant inquiry here is whether the proposed rate is in line with the prevailing market rate for similar work performed by attorneys with reasonably comparable skill, experience, and reputation.

a full-blown jury trial like this case, but it did involve a preliminary injunction hearing, an interlocutory appeal, and two additional appeals related to the district court's orders on attorney's fees. Thus, it is not a perfect analog, but it is a *better* analog to this case than the cases Plaintiff cites involving straightforward FLSA settlements and defaulting defendants, because the fee award contemplated services (like oral argument at a preliminary injunction hearing) that are more akin to trial time than negotiating an FLSA settlement.

Moreover, *Beta Upsilon Chi* undermines Plaintiff's argument that the legal market in Gainesville is some monolith that sets a ceiling for fees at $375 an hour. The fee award in *Beta Upsilon Chi* included hourly rates ranging from $200 for new associates to $400 and $425 for more experienced lawyers with 17 to 32 years' experience and who specialized in First Amendment law. *Id*. at *8; *see also* Case No. 1:07cv135-MW/GRJ, ECF No. 383-2 (Supplemental Declarations in Support of Amended Motion for Attorney Fees). Mind you, these rates were set in 2014. Though inflation is by no means astronomical, Defendants' claimed rates ranging from $275 for an associate with almost three years' experience at the date of the fee request to $450 for a senior attorney with 29 years of specialized experience for a complex eminent domain action are entirely in line with the $200-$425 range this Court approved in 2014 in *Beta Upsilon Chi*.

And yet, Plaintiff hangs its hat on the fact that this Court has reduced rates in other, non-comparable Gainesville cases. Specifically, Plaintiff points to this Court's decision in *Brown v. Lawn Enforc. Agency, Inc.*, 369 F. Supp. 3d 1224 (N.D. Fla. 2019), which involved an FLSA dispute that this Court noted was *not* particularly time-consuming, novel, or difficult, and which did not require exceptional skill. *Id.* at 1227 n.1. Though Plaintiff sought $425/hour for the work performed in *Brown*, this Court credited the Defendant's fee expert and ultimately held that $375/hour was reasonable given the circumstances. *See id.* at 1227 n.2 (noting that "this Court disagrees that $375 would be *a maximum*" and finding that *$375 "is closer to the midrange given the circumstances*" (emphasis added)).

Similarly, Plaintiff points to this Court's decision in *Choice Hotels Int'l v. S&V Enters. of Gainesville*, No. 1:17cv177, 2018 WL 5818372, *5 (N.D. Fla. Mar. 29, 2018), where this Court approved a fee request in a Lanham Act case where the Defendant was a defaulted nonparticipator in the action. There, the plaintiff sought fees ranging in rates from $195 to $350/hour, and this Court agreed that the requested rates were reasonable. But this case provides little in support of Plaintiff's request to cap Defendants' attorney's rates at $375 in an utterly distinguishable case that involves entirely different and complex issues.

Plaintiff's remaining citations similarly fail to persuade this Court that a rate reduction is in order. Instead, Plaintiff continues to rely on distinguishable cases

from the Pensacola Division that involved (1) a relatively straightforward contract dispute and (2) an FLSA action that involved another nonparticipating defendant who did not contest the claimed rate of $375/hour. *See* ECF No. 290 at 5-6. Certainly, Plaintiff cannot reasonably contend that the rates approved in these cases are representative of the rates "customarily charged for legal services of a comparable or similar nature" to the complex, years-long Natural Gas Act proceeding that Plaintiff filed in Gainesville. *See* § 73.092(2)(f), Fla. Stat. Instead, they are inapposite examples of reasonable rates charged for legal services of an entirely different nature in a different legal market. Indeed, Plaintiff's citation to cases and rates approved in the Pensacola Division does nothing to support its argument that rates should be capped at $375 in the Gainesville Division.

Ultimately, this Court finds Defendants' proposed rates for the work they performed in post-trial supplemental proceedings to be reasonable. This finding is based on both the materials filed in support of Defendants' fee request setting out the attorneys' respective skill and years of experience, the opinion of Mr. Stratton finding Defendants' requested fees to be within the range of reasonable rates in this legal market, and taking into consideration this Court's own knowledge and experience regarding hourly rates charged by attorneys in Gainesville.

Specifically, Mr. Brigham, seeking the highest rate of $450/hour, has decades of experience and specialized knowledge gleaned from representing landowners in

eminent domain cases in Florida at both the trial level and on appeal. He represented Defendants as lead counsel, seeing this case through from the beginning in 2016, to a jury trial in 2018, on appeal, and in post-trial litigation through 2021. His work involved litigating novel issues of national importance and complexity—the nature of which is unlike the simple FLSA or default cases Plaintiff cites.

Similarly, Mr. Hutson is a knowledgeable attorney with nearly eight years of experience in the areas of property rights and eminent domain. He has assisted Mr. Brigham throughout this case. Based on Mr. Stratton's affidavit and this Court's knowledge of reasonable rates charged in Gainesville, Mr. Hutson's proposed rate of $350/hour is reasonable given the complexity of this case and his own specialized experience.

This Court agrees with Mr. Stratton's opinion that Mr. Copeland's rate of $325 is on the higher end for an attorney with only about a year of experience when he began working on this case in 2016; however, this Court finds the rate properly reflects what other attorneys would reasonably charge with the amount of experience Mr. Copeland currently possesses. Similarly, this Court finds Mr. Bucalo's rate of $275 is reasonable for an associate of roughly three years' experience.

Here, it is appropriate to apply current rates to account for the delay in receiving payment. *Gray ex rel. Alexander v. Bostic*, 613 F.3d 1035, 1045 (11th Cir. 2010). The litigation in this case has been protracted and involved an extraordinary

outlay of hours in the trial-level litigation, along with Plaintiff's unsuccessful appeal. To compensate for the exceptional and unanticipated delay in payment, it is appropriate to use current rates when calculating the fee award. Therefore, fees based on Defendants' proposed, current rates will be awarded here.

## ii. Number of Hours Reasonably Expended

The next step in the computation of the lodestar is a determination of reasonable hours expended on the litigation. Excluding 2.1 hours related to appellate work, which will be addressed separately below, Defendants expended 221.5 hours in litigating post-trial matters purported to be "supplemental proceedings."[6] As this Court already noted, Defendants cannot be compensated for fees incurred in litigating the motions for new trial, to amend the judgment, and for prejudgment interest, as these issues are encompassed in the "benefits achieved" fee award. This Court's analysis of Defendant's post-trial time sheets, ECF No. 281-4, yields a rough cut of 31.5 hours of work by Mr. Brigham and 6.6 hours of work by Mr. Copeland for time entries related to work on these matters.[7] This leaves 183.4 hours expended

---

[6] The 2.1 hours of appellate work—a separate category of fees available under section 73.131, Florida Statutes, discussed in more detail below—includes 2 hours that Mr. Brigham spent "review[ing the] Notice of Appeal" on February 21, 2019, and 0.1 hours spent "review[ing] [Plaintiff's] Transmittal of Appeal to USCA" on February 22, 2019. These fees are excluded from the supplemental proceedings fee award as they are separately encompassed by Defendants' appellate fee award.

[7] Importantly, this Court is not expected to be a "green-eyeshade accountant" seeking to "achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Rather, this Court endeavors "to do rough justice" in calculating the reasonable fee award. *Id.*

in litigating post-trial matters. Multiplied by these attorneys' reasonable hourly rates yields a lodestar of $66,842.50.[8]

Plaintiff raises two remaining objections to certain billing entries submitted by Defendants. *See* ECF No. 290 at 14-19. After a careful review of the objections, this Court will make the following reductions in calculating the lodestar figure.

First, Plaintiff asserts that Defendants' time litigating fees and costs must be reduced. Plaintiff concedes that time spent litigating entitlement to fees, costs, and the amount of costs is compensable under section 73.092. *See* ECF No. 290 at 14-15 ("The parties agree post-trial time litigating entitlement to costs, the amount of costs, and entitlement to fees is awardable."). However, Plaintiff asserts a fee award for time litigating the *amount* of fees is not allowed under Florida law. *Id*. at 15.

Plaintiff is correct that time spent litigating the *amount* of attorney's fees is not compensable. *See Dep't of Transp., State of Fla. v. Robbins & Robbins, Inc.*, 700 So. 2d 782, 785 (Fla. 5th DCA 1997). Defendants assert, however, that they have already excluded time spent litigating the amount of fees from their computations. *See* ECF No. 280 at 46 ("Only time relating to the entitlement to attorneys' fees (so that, when appropriate, time entries were prorated at 50% to exclude time relating to the amount of attorneys' fees) is recorded or time relating to either entitlement or

---

[8] (65.2 x $450 = $29,340) + (34.7 x $325 = $11,277.50) + (43.5 x $350 = $15,225) + (40 x $275 = $11,000). *See, e.g.*, ECF No. 281-4 (charting total hours expended on post-trial matters).

amount of those items of costs (so that, relating to costs, there was no proration).").

Plaintiff rejects this assertion and contends that Defendants essentially block-billed compensable and non-compensable tasks, and that even after reducing their time by 50%, the amount of time spent litigating entitlement to fees post-judgment is unreasonable. *See* ECF No. 290 at 16. Plaintiff objects to 141.6 hours, totaling $51,207.50 in fees, for the allegedly block-billed tasks related to entitlement to fees and costs *and* amount of fees.[9] ECF No. 290 at 16. Specifically, Plaintiff asserts Defendants have inadequately segregated recoverable fees from nonrecoverable fees.

A review of Defendants' billing entries reveals eight entries exceeding four hours: one logged by the highest paid trial attorney, Mr. Brigham, and seven by a less-senior attorney and the lowest-paid trial attorney. *See* ECF No. 281-4. The description of the tasks completed in these entries allow this Court to ascertain the services rendered.[10] Accordingly, this Court will not deduct these time entries from

---

[9] 40 hours by Bucalo ($11,000), 48.8 hours by Brigham ($21,960), 43.5 hours by Hutson ($15,225) and 9.3 hours by Copeland ($3,022.5) totaling $51,207.50.

[10] For example, see Mr. Brigham's entry at ECF No. 281-4 at 3 ("Continue Draft Amended Affidavit of Attys' Fees and Costs (Statement of Claim) and amended exhibit thereto; Continue Draft Declaration of Andrew Prince Brigham; Review/Comment on Other Declarations; Continue Draft Motion for Attys' Fees and Costs and Supporting Memorandum of Law"). *See also id*. at 6 ("Research Case law for Def's Motion for Atty's Fees and Cost and Supporting Memorandum re: Expert Costs; Continue Draft Def's Motion for Atty's Fees and Cost and Supporting Memorandum re: Costs; Review Declaration of Andrew Brigham re: Def's Motion for Atty's Fees and Cost and Supporting Memorandum") and *id*. ("Research Caselaw re Cost Analysis and Issues relating to Pltf's Statement of Position (Ray, Harris, Samnik); Continue Draft/Review Def's Motion for Atty's Fees and Cost and Supporting Memorandum; Prepare Exhibits re: Def's Motion for Atty's

Defendants' lodestar amount on the basis that they are impermissibly "block billed." *See Home Design Servs., Inc. v. Turner Heritage Homes, Inc.*, No. 4:08-cv-355, 2018 WL 4381294, at *6 (N.D. Fla. May 29, 2018) (declining to eliminate requested fees for block-billed time entries occurring in the days immediately before trial because the court was able to ascertain from the billing descriptions in the block entries the services rendered).

In addition, Mr. Bucalo's and Mr. Hutson's combined seven entries for time exceeding four-hour blocks are specifically related to litigating costs and identify the respective expert witnesses for whose work they seek compensation—a compensable category of post-judgment "supplemental proceedings." *See, e.g.*, FN 10; *see also* ECF No. 281-4 at 6-7. Mr. Brigham's single entry for more than four hours generally entails litigating fees—though he has attested that he has already deducted time spent on tasks related to litigating the amount, rather than entitlement, to fees. *See* ECF No. 280 at 47. While this Court resolved the overarching matter of entitlement to fees when it determined the choice of law for measuring compensation ahead of trial, Defendants were left to litigate which categories of compensable fees to which they are entitled following the trial in this case. Accordingly, having reviewed the time sheets submitted in support of Defendants' motion, this Court

---

Fees and Cost and Supporting Memorandum; Prepare/Review Exhibits re: Declaration of Andrew Brigham").

finds Mr. Brigham's 50% reduction of time spent litigating fees to preclude recovery for time spent on the *amount* of fees rather than *entitlement* to fees to be reasonable.

This Court also concludes that the remaining billing entries that Plaintiff has objected to as "block billed" are compensable because the entries contain enough detail to enable this Court to ascertain the work performed and because the amount of time expended on the tasks was reasonable. *Cf. Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1377–78 (M.D. Fla. 2010) (reducing requested attorneys' fees because "block billing" prevented an evaluation of whether or not the attorney spent a reasonable amount of time on a task).

Finally, Plaintiff asserts this Court should reduce Defendants' time related to PNC Bank's motion regarding disbursement of funds. ECF No. 290 at 18-19. Specifically, Plaintiff seeks a 25% across-the-board reduction in Mr. Brigham's and Mr. Copeland's time spent on this issue, as the relevant time entries are "vague and not easily identifiable as compensable or non-compensable." *Id*. at 18. Citing *Ryan v. City of Boynton Beach*, 157 So. 3d 417 (Fla. 4th DCA 2015), Plaintiff asserts the dispute between PNC Bank and Defendants regarding the alleged default on a mortgage and resulting litigation regarding disbursement of condemnation proceeds in the court registry "is entirely private," and therefore not compensable. ECF No. 290 at 18. Ultimately, Plaintiff asks this Court to reduce Mr. Copeland's time by 5.6

hours and Mr. Brigham's time by 2.6 hours, representing a total reduction of $2,990 in fees.

The *Ryan* case is illuminating here. In that case, the City of Boynton Beach recorded two orders imposing fines for code enforcement violations against a property owner, whose property later became the subject of an eminent domain proceeding initiated by the City. A consent judgment for $99,000 for the property at issue was entered and the City deposited that amount into the court registry. Later, the property owner sought disbursement of the $99,000, but the City filed its own motion to withdraw funds to satisfy its liens for the code enforcement violations that had been recorded before the eminent domain action began. On appeal, the property owner sought fees from the condemnor for trial-level time spent litigating the issue of disbursement and enforcement of the liens in the condemnation action. The court held that he "was entitled to recover those trial level fees he incurred litigating whether the City's filing of a motion in the eminent domain proceedings was a proper vehicle for the City to collect on its lien." *Id*. at 421-22. This was so because "[t]he issue of whether [the property owner] or the condemning authority was entitled to the funds in the court registry simply would not exist but for the eminent domain proceedings." *Id*. at 422. However, the court also held that time spent litigating the validity and enforceability of the liens was not additionally compensable under section 73.092(2), because these issues "existed regardless of

the eminent domain proceedings and cannot be said to have directly arisen from, or have been directly related to, the eminent domain proceedings." *Id*.

Here, like in *Ryan*, time spent litigating PNC Bank's entitlement to condemnation proceeds deposited with the Clerk would not exist but for this eminent domain proceeding. However, issues associated with the validity or enforceability of the mortgage with PNC Bank exist regardless of the eminent domain case—indeed, PNC Bank filed a separate mortgage foreclosure action to enforce its rights under the loan. Accordingly, tasks performed in responding to the bank's motion to determine entitlement to the proceeds are compensable; however, any work performed to determine the validity or enforceability of the mortgage agreement is not compensable.

Here, PNC Bank's motion specifically sought "an opportunity to show its entitlement to the Proceeds." ECF No. 242 at 3. Mr. Brigham expended roughly 11 hours and Mr. Copeland expended roughly 22.5 hours addressing PNC Bank's "emergency motion for disbursement of funds," ECF No. 242, issues related to disbursement, and apportionment. *See* ECF No. 281-4. This Court ordered Defendants to file an expedited response, ECF No. 243, which they did on October 2, 2020, ECF No. 244, in addition to a sur-reply, ECF No. 251, which they filed on November 6, 2020, ECF No. 252. Nearly all the time expended on apportionment and disbursement of condemnation proceeds corresponds with the briefing deadlines

this Court set. The only time entry with which this Court takes issue is the two hours Mr. Copeland spent "review[ing] documents in [the] PNC Bank Foreclosure Action," on October 1, 2020. ECF No. 281-4 at 4. As this Court has already explained, this matter—the mortgage foreclosure action—is not wholly dependent upon the eminent domain case and therefore not compensable under the court's reasoning in *Ryan*. Accordingly, Defendants' time spent litigating the PNC Bank apportionment and disbursement issue shall be reduced by two hours—or $650 of Mr. Copeland's time—yielding a total time expended on compensable, post-judgment "supplemental proceedings" of 181.4 hours. This Court finds this number of hours to be a reasonable amount of time expended on the post-trial matters. Multiplied by these attorneys' reasonable hourly rates yields a lodestar of $66,192.50 for compensable post-judgment "supplemental proceedings."[11]

### iii. Remaining Factors under § 73.092(2)(a)-(g)

Finally, in considering a reasonable fee award for post-trial supplemental proceedings, this Court considers the remaining factors set out in section 73.092(2)(a)-(g).

---

[11] (65.2 x $450 = $29,340) + (32.7 x $325 = $10,627.50) + (43.5 x $350 = $15,225) + (40 x $275 = $11,000). *See, e.g.*, ECF No. 281-4 (reducing total hours expended on compensable post-trial matters by two hours re: Mr. Copeland's time spent reviewing foreclosure action documents).

*1. The novelty, difficulty, and importance of the questions involved*:

This case involved novel, difficult, and important questions pertaining to the choice of law for determining the proper compensation measure when a private entity takes a private citizen's property pursuant to its authority under the Natural Gas Act. The importance of this question cannot be understated given the interests the property owners have in receiving just compensation for their property.

*2. The skill employed by the attorney conducting the case*:

Defendants' attorneys were skilled litigators who ultimately achieved a good result for their clients at trial in this case.

*3. The amount of money involved*:

An enormous amount of time and money were involved in this case from the perspective of the property owners—ultimately, the jury awarded almost a million dollars to Defendants when Plaintiff originally offered a small fraction of that amount to purchase their property. *See* ECF No. 280-6 (initial offer of $59,700).

*4. The responsibility incurred and fulfilled by the attorney*:

The case was defended by Mr. Brigham's firm and each of the attorneys seeking fees for post-trial work shared responsibilities in litigating entitlement to fees and costs and defending against PNC Bank's motion regarding disbursement of the condemnation proceeds.

*5. Any attorney's fee award made under § 73.092(1):*

The parties have agreed that Defendants are entitled to a "benefits achieved" fee award under section 73.092(1). This award exceeds $220,000 and encompasses the work performed leading up to and including trial, and the benefits achieved at trial and defending the verdict. While Defendants are entitled to this award, it does not warrant any adjustment in the fee award for post-trial "supplemental proceedings," as these supplemental proceeding fees are not otherwise provided for under section 73.092(1).

In short, this Court finds Defendants' proposed hourly rates and the time expended with certain adjustments excluding non-compensable tasks to be reasonable.[12] Accordingly, Defendants' fee request for post-trial supplemental proceedings is **GRANTED in part**. Defendants are entitled to **$66,192.50 in "supplemental proceeding" fees** for **181.4 hours** of time expended on these proceedings multiplied by their reasonable hourly rates.

## IV. Appellate Fees under § 73.131, Fla. Stat.

Defendants also seek attorney's fees for time expended in defending the judgment on appeal pursuant to section 73.131, Florida Statutes. Specifically,

---

[12] These exclusions include time expended on the motion for new trial, motion to amend the judgment, and motions for prejudgment interest (31.5 hours for Mr. Brigham and 6.6 hours for Mr. Copeland), appellate tasks that Mr. Brigham performed (2.1 hours), and Mr. Copeland's review of documents from the separate foreclosure action (2 hours).

Florida law entitles a defendant in an eminent domain action to recover reasonable appellate fees, except when the defendant takes an appeal wherein the lower court's judgment is affirmed. *See* § 73.131(2), Fla. Stat. ("The petitioner shall pay all reasonable costs of the proceedings in the appellate court, including a reasonable attorney's fee to be assessed by that court, except upon an appeal taken by a defendant in which the judgment of the lower court shall be affirmed."). "[T]he lodestar approach should be used in establishing the amount of the reasonable appellate fees." *State, Dep't of Transp. v. Skinners Wholesale Nurs., Inc.*, 736 So. 2d 3, 7 (Fla. 1st DCA 1998).

A fee applicant must set out the general subject matter of the time expended by the attorney "with sufficient particularity so that the court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. Excessive, redundant, or otherwise unnecessary hours should be excluded from the amount claimed. *Id.* at 1301. A fee applicant must exercise billing judgment by excluding "excessive, redundant, or otherwise unnecessary [hours]." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Where a fee applicant does not exercise billing judgment, "courts are obligated to do it for them." *ACLU of Ga.*, 168 F.3d at 428. When a request for attorneys' fees is unreasonably high, the court "may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut," but it cannot do both. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350–51 (11th Cir.

2008).[13] The Eleventh Circuit has "recognized that in cases 'where fee documentation is voluminous,' it will not be feasible to require a court to 'engage in such a precise [hour-by-hour] review.' " *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001) (quoting *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994)) (finding 569.3 hours to be sufficiently voluminous that no hour-by-hour analysis was required). Accordingly, this Court will address each of Plaintiff's specific objections, performing an hour-by-hour analysis where "feasible" and an across-the-board cut where appropriate.

Here, Defendants seek $103,404.22 in appellate fees, including $53,895 for work performed by Mr. Brigham's firm and William K. Crispin, plus $49,800 for work performed by attorneys at Larson O'Brien and True North, LLC. ECF No. 281 at 6. Plaintiff raises numerous objections to Defendants' appellate time entries and hourly rates and ultimately seeks a reduction in appellate fees to $44,441.25.

Once again, this Court begins with an analysis of the hourly rates that Defendants' appellate attorneys seek. This Court then considers whether Defendants' submissions demonstrate that the number of hours claimed for work on the appeal is reasonable.

---

[13] To be clear, this Court may apply both an hour-by-hour reduction to calculate the lodestar and an across-the-board reduction <u>after</u> computing the lodestar to account for the results obtained in the litigation. *See Fiedler v. Anglin's Beach Café, LLC*, No. 15-60989, 2017 WL 1278632, at *3 (S.D. Fla. Apr. 3, 2017) (construing *Bivens*).

*A. Reasonable Hourly Rates*

The parties dispute whether the rates that Defendants' attorneys seek for their appellate work are reasonable. Defendants seek the following hourly rates for the attorneys who worked on the appeal: $650/hour for Thor Hearne, $525/hour for Stephen Davis, $500/hour for Tim Belz, $450/hour for Andrew Prince Brigham, $400/hour for Matt Belz, $325/hour for E. Scott Copeland, $200/hour for William Crispin, and $180/hour for Kathryn Payne. *See* ECF No. 281-9 (appellate time entries for Hearne, Davis, Belz, Belz, and Payne) & ECF No. 281-8 (appellate time entries for Brigham, Copeland, and Crispin).[14] Defendants have provided the Affidavits of Andrew Prince Brigham and Thor Hearne setting out the relevant experience of the attorneys who have requested the above-listed rates. *See* ECF No. 281 at 3-10, ECF No. 281-2, and ECF No. 266. Their qualifications are as follows.[15]

Thor Hearne is an experienced attorney with over thirty years of practice. ECF No. 266 at 1. He has been lead counsel in many high-stakes and complex federal trial-level and appellate cases throughout the United States, including numerous

---

[14] Mr. Brigham's time sheets list an hourly rate of $425/hour. *See* ECF No. 281-8 at 6. But the math to reach a total of $48,825 in appellate fees for Mr. Brigham requires a rate of $450 x 108.5 hours. *See id*. Nowhere else in Defendants' fee request is there mention of a proposed rate of $425/hour for Mr. Brigham's appellate work. Accordingly, this Court construes the $425 fee in Mr. Brigham's billing records to be a scrivener's error and will proceed with the understanding that Mr. Brigham seeks a fee of $450/hour for his appellate work.

[15] Mr. Brigham's and Mr. Copeland's qualifications are the same as detailed in the "supplemental proceedings" fee section of this Order and apply with equal force to their appellate fee request.

cases involving property rights and eminent domain in Florida. *Id*. at 1-2, 7. Further, Mr. Hearne has worked with Mr. Brigham on many matters and opines that Mr. Brigham has an "outstanding reputation as a trial attorney in eminent domain litigation." *Id*. at 13.

Stephen Davis is a partner with Mr. Hearne's firm. ECF No. 281-7 at 1. He concentrates his practice in federal appeals at the Federal Circuit Court and U.S. Supreme Court, with specialization in election law. *Id*. Timothy Belz and Matt Belz are both Of Counsel to Mr. Hearne's firm. *Id*. at 2. Timothy Belz is an experienced attorney who was previously a partner of 24 years elsewhere before joining Mr. Hearne. *Id*. Before that, he was a trial attorney with the U.S. Department of Justice. *Id*. His work largely focuses on commercial, probate, and constitutional disputes at the trial and appellate levels. *Id*. And, finally, Matt Belz is an attorney with roughly 13 years of experience as a litigator. *Id*. His focus is on federal litigation and appeals. *Id*.

Defendants have also provided the declaration of M. Stephen Turner, an attorney with over 50 years of experience, including appellate litigation. ECF No. 279. Mr. Turner has worked as a federal law clerk, Air Force JAG Officer, special assistant Florida Attorney General, state agency general counsel, and in private practice. *Id*. at 2. He has broad appellate experience and has appeared before Florida appellate courts, the Florida Supreme Court, and the Eleventh Circuit in a variety of

cases. *Id*. Mr. Turner practices in the Northern District of Florida, and currently charges rates ranging from $500-650 when retained for matters involving appellate litigation. *Id*. at 2-3. Accordingly, I find Mr. Turner to be familiar with appellate rates charged throughout the Northern District of Florida and well qualified to offer his opinion on the reasonableness of Defendants' appellate attorneys' rates.

Mr. Turner opines that, based on his knowledge and experience, communication with other practitioners in the Northern District of Florida, and his review of Mr. Brigham's and Mr. Hearne's affidavits and accompanying exhibits, he believes reasonable rates in the Northern District of Florida for associate attorneys with three to five years of experience range from $250 to $300, associates with five to seven years of experience range from $300 to $350, associates with eight to ten years of experience range from $325-375, and senior attorneys with greater than ten years of experience range from $450 to $650. ECF No. 279 at 3-4. Mr. Turner further opines that his review of the requested rates in this case are well within the range of reasonable appellate rates with which Mr. Turner is familiar. *Id*.

Plaintiff again objects to the rates Defendants request, relying on past decisions by this Court granting fee awards for rates as high as $375/hour in Gainesville. Plaintiff asserts this Court should set an artificial ceiling on appellate rates without taking into consideration the experience or reputation of the attorneys, the nature of the services provided, or the complexity of the issues involved, and

without comparison to rates awarded in cases involving comparable issues. Once again, this is not the law.

Plaintiff asserts that Defendants rely on non-local rates, which do not reflect the reasonable rates associated with comparable work performed in Gainesville. Plaintiff specifically takes issue with Defendants' request for rates for non-local attorneys with "specialized expertise." ECF No. 290 at 7. Ultimately, Plaintiff asks this Court to cap the rates at $375/hour for Andrew Prince Brigham, Thor Hearne, and Tim Belz, $350/hour for Stephen Davis, $300/hour for Matt Belz, and $200/hour for E. Scott Copeland and William Crispin. *Id*. at 8.

Plaintiff's request to cap appellate rates at $375/hour has nothing to do with the services provided, the subject matter of the appeal, or the experience and reputation of the attorneys. Instead, Plaintiff seeks to cap rates that any lawyer can charge for appellate work in Gainesville at $375, irrespective of the nature of the services provided. Plaintiff also asserts that Defendants are seeking non-local rates for attorneys with Mr. Hearne's firm, given that these lawyers are based in Washington, D.C. But this assertion is belied by Defendants' fee expert, who practices in this district and charges up to $650 in appellate matters. The fact that Defendants hired some non-local attorneys does not automatically transform their proposed hourly rates into "non-local rates." Simply put, just because a rate is higher than one would like to pay does not make it a "non-local rate." In addition, Plaintiff

does not address Defendants' fee expert in its response to Defendants' motion, nor does Plaintiff offer any evidence to challenge Mr. Turner's opinion that Defendants' attorneys' proposed rates are reasonable.

Despite Plaintiff's arguments to cap rates at $375/hour, this Court finds Defendants' proposed rates for their appellate work to be reasonable. This Court's finding is based on both the materials filed in support of Defendants' fee request setting out the attorneys' respective skill, reputation, and years of experience and taking into consideration this Court's knowledge of hourly rates charged by attorneys in Gainesville. Moreover, this Court is mindful that Mr. Hearne, Mr. Davis, Mr. T. Belz, and Mr. M. Belz have already exercised billing judgment and reduced their non-local rate of $899 and $747 to more reasonable local rates of $650, $525, $500, and $400, respectively.

## B. Number of Hours Reasonably Expended

The next step in computing the lodestar is a determination of reasonable hours expended on the litigation. Defendants expended roughly 304.5 hours in litigating the appeal in this case.[16] Multiplied by these attorneys' reasonable hourly rates yields a lodestar of $155,545.[17] But Mr. Hearne's firm limited their requested fee award—

---

[16] This includes about 134 combined hours for Mr. Brigham, Mr. Copeland, and Mr. Crispin, and about 170 combined hours for attorneys with Mr. Hearne's law firm.

[17] $99,600 requested for attorneys with Mr. Hearne's firm, $48,825 for Mr. Brigham, $5,070 for Mr. Copeland, and $2,050 for Mr. Crispin. *See, e.g.*, ECF No. 281-8 and ECF No. 281-9 (charting total hours expended on appeal).

taking into consideration time spent on a separate appeal of another Natural Gas Act case that involved similar parties—by reducing by half their hours expended and yielding a total reduction in fees of $49,800. In addition, for reasons that are not clearly explained, Defendants have omitted Mr. Crispin's time from their final lodestar calculation. *Compare* ECF No. 281 at 6 with ECF No. 281-8. Accordingly, the total adjusted loadstar is $103,695, based on the $49,800 sought for attorneys working with Mr. Hearne at Larson O'Brien and True North, plus $48,825 for Mr. Brigham, and $5,070 for Mr. Copeland. *See id*.

Plaintiff raises numerous objections to specific billing entries submitted by Defendants. *See* ECF No. 290 at 19-27. After a careful review of the objections, this Court will make the following reductions in calculating the lodestar figure.

First, Plaintiff asserts this Court should reduce the time that some attorneys spent solely reviewing the work of others. Specifically, Plaintiff asks this Court to exclude all the time that Mr. Copeland and Mr. Crispin expended in working on the appeal as their time was spent in short increments, either corresponding with other attorneys or reviewing drafts without making any significant contributions to the briefs or oral argument preparations. ECF No. 290 at 20-21. But based on the total amount of fees that Defendants seek for work performed by Mr. Brigham and his co-counsel, it appears Mr. Crispin's time has already been excluded from Defendants' lodestar calculation. Moreover, Defendants' fee agreements apparently

did not contemplate Mr. Crispin's scope of work to include appellate matters. *Compare* ECF No. 281-1 (trial-level employment agreement listing Law Offices of William K. Crispin) and ECF No. 281-6 (addendum to employment agreement for appellate work listing Brigham Property Rights Law Firm PLLC and Larson O'Brien, LLC and letter of engagement from True North). Based on the exclusion of Mr. Crispin's time in Defendants' proposed lodestar amount and the exclusion of Mr. Crispin from the appellate addendum to the fee agreement with Defendants, this Court agrees with Plaintiff's objection and will not include Mr. Crispin's time in the final lodestar calculation.

Mr. Copeland's time, though, is a different matter. A review of his appellate billing records shows he worked on the appeal at numerous half-hour-or-less intervals with a couple of larger chunks of time devoted to more substantial contributions. *See* ECF No. 281-8 at 1-2. Specifically, Mr. Copeland expended a combined three hours in drafting an appellate mediation letter and attending the appellate mediation, in addition to an hour and a half reviewing Plaintiff's appellate brief, a half hour drafting a motion for extension of time to file Defendants' brief, a half hour reviewing supplemental authority, and a combined three hours reviewing Defendants' draft brief, attending oral argument, and corresponding regarding appellate costs. This time, combined with the remaining short intervals spent reviewing filings and corresponding about the appeal, amounts to a mere 15.6 hours

spread across 18 months. Contrary to Plaintiff's position, Mr. Copeland's time is not excessive, nor is it comparable to the 53.3 hours of "highly questionable" time an attorney spent conferencing and reviewing filings in *Wilson v. Dep't of Child. & Fams.*, No. 3:02-cv-357-J-32TEM, 2007 WL 1100469, *4 (M.D. Fla. April 11, 2017). Accordingly, this Court will not exclude *all* of Mr. Copeland's time. However, this Court has concerns regarding the reasonableness of some billing entries pertaining to frequent internal communications. This Court will address these concerns below.

Plaintiff objects to billing for "extensive internal communications," and ultimately asks this Court to reduce Defendants time by 13.3 hours for Mr. Brigham, 4.4 hours for Mr. Copeland, 10.8 hours for Mr. Davis, 4.9 hours for Mr. Hearne, and 0.4 hours for Mr. T. Belz, for a combined 33.8 hour reduction. Plaintiff asserts that while some internal communication is necessary, billing for more than 30 hours is improper and should not be permitted.

Here, Mr. Brigham expended 108.5 hours on the appeal—roughly 90% of which was spent on substantial contributions to conferencing with co-counsel on strategy, preparing and editing Defendants' appellate brief, and preparing for and attending oral argument. *See* ECF No. 281-8 at 4-9. Mr. Hearne expended 45.5 hours on the appeal (reduced by 50% so as not to include time spent on the related appeal)—almost all of which was spent on substantial contributions to conferencing

on appellate strategy, researching, drafting, and editing the appellate brief, and preparing for oral argument. *See* ECF No. 281-9 at 1-5. Mr. Davis expended about 37 hours on the appeal (reduced by 50% so as not to include time spent on the related appeal)—roughly 14.5 hours of which was related to conferencing, corresponding, and strategizing with co-counsel. *Id*. Mr. T. Belz expended 0.45 hours on the appeal (reduced by 50% so as not to include time spent on the related appeal)—half of which involved a "conference with team members" ahead of a court hearing. *Id*. Mr. M. Belz expended 0.5 hours on the appeal (reduced by 50% so as not to include time spent on the related appeal)—all of which involved drafting a reply to Plaintiff's response to Defendants' motion to transfer consideration of attorney's fees and costs. *Id*. And Ms. Payne—a "project assistant"—expended 1.5 hours on the appeal (reduced by 50% so as not to include time spent on the related appeal). *Id*.; *see also* ECF No. 281-7 (True North firm employee qualifications listing Ms. Payne as a "project assistant").

As an initial matter, Ms. Payne's time should be excluded from Defendants' appellate attorney's fees award. Purely clerical or secretarial tasks should not be billed regardless of who performed them. *Bromagen v. Comm'r of Soc. Sec.*, No. 6:10-cv-1617, 2011 WL 1519940, at *1 (M.D. Fla. Mar. 28, 2011) (citing *Missouri v. Jenkins*, 491 U.S. 274 (1989)). Here, Ms. Payne, a "project assistant," billed time

preparing "research materials" and "appeals materials" for Mr. Hearne. This appears to be purely clerical work, which is not compensable with attorney's fees.

As for a reduction based on the many "internal communications," this Court agrees that some of appellate counsel's time entries are imprecise in the manner they group tasks together and that the billing records, particularly Mr. Copeland's and Mr. Davis's, lack a degree of billing judgment when it comes to seeking compensation for numerous conferences. This Court finds a minor reduction for excessive billing is appropriate with respect to Mr. Copeland and Mr. Davis based on their many internal conferences and reviews. Accordingly, Mr. Copeland's time shall be reduced by 3 hours—representing an approximately 50% reduction in his many time entries spent reviewing or drafting emails at 0.1- and 0.2-hour intervals. Mr. Davis's time shall be reduced by 4.5 hours—representing an approximately 50% reduction in his many entries involving conferencing and corresponding with other attorneys and administrative personal with the Eleventh Circuit. This leaves Mr. Copeland with 12.6 hours and Mr. Davis with 32.5 hours, yielding a final lodestar amount of **$99,982.50**.[18]

Finally, Plaintiff asserts this Court should reduce Defendants' appellate fee award due to "limited results" at the Eleventh Circuit. ECF No. 290 at 23-25. Florida

---

[18] Including $52,920 for attorneys Brigham and Copeland ((12.6 x $325 = $4,095) + (108.5 x $450 = $48,825)) and $47,062.5 for attorneys Hearne, Davis, T. Belz, and M. Belz ((45.5 x $650 = $29,575) + (32.5 x $525 = $17,062.5) + (0.45 x $500 = $225) + (0.5 x $400 = $200)).

courts have recognized that in calculating a fee award under section 73.131, "it may be appropriate for the trial court to consider the result obtained [on appeal]." *Seminole Cnty. v. Boyle Inv. Co.*, 724 So. 2d 645, 646 (Fla. 5th DCA 1999) (citing *Lee Cnty. v. Tohari*, 582 So. 2d 104, 105 n.1 (Fla. 2d DCA 1991)). This is so, perhaps because section 73.131 mandates an appellate fee award in any case where the condemnor is responsible for taking the appeal, even if the property owner has zero success on appeal. *See Denmark v. State Dep't of Transp.*, 389 So. 2d 201 (Fla. 1980); *see also Skinners*, 736 So. 2d at 9 ("[I]t seems clear that the trial court is authorized to increase or decrease the lodestar fee by a specific dollar amount to reflect the attorney's unusual success or failure in the case.") (quoting *Tohari*, 582 So. 2d at 105)). Here, Plaintiff specifically asks this Court to reduce the fee award by 30% considering the fact that the Eleventh Circuit—though affirming the judgment in Defendants' favor on appeal—found it lacked jurisdiction to consider this Court's ruling on entitlement to attorney's fees absent a final order setting out the amount of fees to be awarded. As explained below, Plaintiff's request for a "results obtained" reduction lacks merit.

Following entry of the amended judgment for Defendants, Plaintiff filed notice that it was appealing the amended judgment, this Court's order denying the motion for new trial, and several interlocutory orders, including this Court's order denying Plaintiff's motion for partial summary judgment, several evidentiary

rulings, and orders pertaining to jury instructions. *See* ECF No. 228. On August 3, 2020, the Eleventh Circuit issued a 13-page per curiam opinion holding that this Court did not err in admitting the landowner testimony and any errors in the jury instructions or Defendants' arguments did not prejudice Plaintiff. *See* ECF No. 233. The Eleventh Circuit affirmed Defendants' award of compensation. *Id*. However, since this Court had not yet determined an amount of fees to be awarded to Defendants, the Eleventh Circuit held it lacked jurisdiction to consider the issue of entitlement and dismissed that aspect of Plaintiff's appeal. *Id*.

According to Plaintiff, the Eleventh Circuit's dismissal of Plaintiff's appeal with respect to entitlement to attorney's fees equates to a "limited" result for Defendants, even though the judgment and compensation award was affirmed in their favor. Moreover, Plaintiff asserts, the other issues that Defendant "won" on appeal were already fully developed at the district court level and in earlier appeals by Defendants' same counsel, therefore their success is similarly "limited" given the groundwork the attorneys had already laid. However, this Court is not persuaded that the Eleventh Circuit's dismissal of the fee issue that Plaintiff appealed translates to "unusual failure" on the part of Defendants. Indeed, Defendants successfully defended the amended judgment and their condemnation award on appeal. Had the Eleventh Circuit ruled in Defendants' favor on the issue of entitlement to attorney's fees, they would have been *entirely* successful, and Plaintiff would have been

entirely unsuccessful. Defendants' success was not complete in this limited respect—but this does not amount to an unusual failure that warrants a reduction in Defendants' appellate fee award. Accordingly, this Court, in its discretion, will not reduce the appellate fee award based on the results obtained on appeal.[19]

For these reasons, Defendants' motion for attorneys' fees is **GRANTED in part** with respect to their appellate fee request. Defendants are awarded **$99,982.50 in appellate fees** for **121.1 hours** of work that attorneys Brigham and Copeland performed and **78.95 hours** that attorneys Hearne, Davis, T. Belz, and M. Belz performed.[20]

## V. Costs under § 73.091, Fla. Stat.

Finally, Defendants seek costs amounting to $108,404.22 as part of Florida's "full compensation" measure. ECF No. 283 at 28; *see also* ECF No. 281-5 ("Amended Renewed and Supplemented Bill of Costs"). Subject to Plaintiff's preserved objection regarding the choice of law determining the measure of compensation under the Natural Gas Act, the parties have stipulated to an award of **costs for court reporting services amounting to $5,619.50**. ECF No. 283 at 34.

---

[19] Likewise, the results obtained on appeal were not unusually successful—nor have Defendants sought a percentage increase in the fee award based on the results obtained on appeal—accordingly, this Court finds an increase in the fee award is unwarranted.

[20] $52,920 for attorneys Brigham and Copeland ((12.6 x $325 = $4,095) + (108.5 x $450 = $48,825)) and $47,062.5 for attorneys Hearne, Davis, T. Belz, and M. Belz ((45.5 x $650 = $29,575) + (32.5 x $525 = $17,062.5) + (0.45 x $500 = $225) + (0.5 x $400 = $200)).

However, Plaintiff objects to additional amounts under Defendants' remaining categories of costs, and asserts this Court is limited by federal law when in it comes to what costs it can award to Defendants. ECF No. 290 at 27-45.

To start, Florida law allows for recovery of reasonable costs in eminent domain actions. Section 73.091, Florida Statutes, specifically provides:

> (1) The petitioner shall pay attorney's fees as provided in s. 73.092 as well as *all reasonable costs incurred in the defense of the proceedings in the circuit court*, including, but not limited to, reasonable appraisal fees and, when business damages are compensable, a reasonable accountant's fee, to be assessed by that court. No prejudgment interest shall be paid on costs or attorney's fees.
>
> . . .
>
> (3) In assessing costs, the court shall consider all factors relevant to the reasonableness of the costs, including, but not limited to, the fees paid to similar experts retained in the case by the condemning authority or other parties and the reasonable costs of similar services by similarly qualified persons.
>
> (4) In assessing costs to be paid by the petitioner, the court shall be guided by the amount the defendant would ordinarily have been expected to pay for the services rendered if the petitioner were not responsible for the costs.
>
> (5) The court shall make specific findings that justify *each sum awarded as an expert witness fee.*

§ 73.091, Fla. Stat. (emphasis added).

Without question, reasonable expert witness fees are included in the computation of reasonable costs. Moreover, expert witness fees are included in the measure of "just compensation" in eminent domain actions. *Seminole Cnty. v.*

*Chandrinos*, 816 So. 2d 1241, 1244 (Fla 5th DCA 2002) (citing *Dade Cnty. v. Brigham*, 47 So. 2d 602 (Fla. 1950)) ("Owners are entitled to expert witness fees, which go to the establishment of just compensation.").

On the other hand, Plaintiff argues that this Court is prohibited from resorting to state law to determine the amount of compensable costs and may award only those costs available under 28 U.S.C. § 1821 and 28 U.S.C. § 1920. Section 1920 limits recoverable costs to certain categories; namely, (1) fees of the clerk and marshal, (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case, (3) fees and disbursements for printing and witnesses, (4) fees for exemplification and the costs of making copies of any materials where costs are necessarily obtained for use in the case, (5) docket fees, (6) compensation of court appointed experts, interpreters, and other interpretation costs. *See* 28 U.SC. § 1920(1)-(6). In turn, section 1821(b) limits witness fees to $40 a day for attendance in court or at a deposition. 28 U.S.C. § 1821(b). Plaintiff further asserts Defendants' failure to address this argument or explain which remaining costs are awardable under federal law leaves this Court with little to do but deny Defendants' costs claim.

Plaintiff comes armed with case law showing costs—especially expert witness fees—are generally limited by federal law. Specifically, the Supreme Court has held "that absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations

set out in § 1821 and § 1920." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987). In addition, the Eleventh Circuit has unequivocally held that in an ordinary diversity action, "it is well settled that expert fees cannot be assessed in excess of witness fees provided in § 1821." *Kivi v. Nationwide Mut. Ins. Co.*, 695 F.2d 1285, 1289 (11th Cir. 1983).

But Plaintiff's argument implicitly hinges on application of Federal Rule of Civil Procedure 54(d), which awards costs to "prevailing parties," "[u]nless federal statute, these rules, or a court order provides otherwise." Fed. R. Civ. P. 54(d). Specifically, the Supreme Court in *Crawford* interpreted the "logical conclusion from the language and interrelation of" 28 U.S.C. §§ 1821 and 1920, and Rule 54(d), to be that "§ 1821 specifies the amount of the fee that must be tendered to a witness, § 1920 provides that the fee may be taxed as a cost, and *Rule 54(d) provides that the cost shall be taxed against the losing party unless the court otherwise directs*." *Crawford*, 482 U.S. at 441 (emphasis added). But this Court has already explained that, by operation of Rule 71.1(l), this Court is not bound by Rule 54(d) in this case. *See Sabal Trail Transmission, LLC v. Real Estate, et al.*, No. 1:16cv63-MW/GRJ, 2017 WL 2783995, * (N.D. Fla. June 27, 2017) ("In any event, all that can be gleaned from Rule 71.1(1)—and, more broadly, Rule 71.1 generally—is that this Court is not bound by Rule 54(d)."). Rule 71.1(l) explicitly states that "[c]osts are not subject to Rule 54(d)." Fed. R. Civ. P. 71.1(l). As this Court noted in its earlier

order, this provision is necessary to protect private property owners from a reduction of their compensation awards, as the condemnors in such cases will typically be "prevailing parties" ordinarily entitled to costs under Rule 54(d). *Id*.

Moreover, the Eleventh Circuit has recently explained that *Kivi* and cases like it do not require automatic application of sections 1920 and 1821 in *every* federal case. *See Off Lease Only, Inc. v. Lakeland Motors, LLC*, --- F. App'x ---, 2021 WL 485706, *3 (11th Cir. Feb. 10, 2021) (affirming award of expert witness costs as a curative condition of a Rule 41(a)(2) dismissal). Further, *Kivi* notes an old Fifth Circuit case where the court affirmed the district court's decision to award expert witness fees in excess of the federal cap even though the district court heard the case by virtue of its diversity jurisdiction. *See id*. (discussing *Henning v. Lake Charles Harbor & Tunnel Dist.*, 387 F.2d 264, 265 (5th Cir. 1968)). Specifically, in *Henning*, the Fifth Circuit affirmed an award of expert witness fees as costs in an eminent domain case under Louisiana law. 387 F.2d at 267. The Fifth Circuit rejected the argument that because the case had been removed to the district court based on the court's diversity jurisdiction, the district court had no authority to tax costs in excess of the daily witness costs allowed under federal law. *Id*. (citing *Kirby Lumber Corp. v. Louisiana*, 293 F.2d 82, 83 (1961) and *Green v. Am. Tobacco Co.*, 304 F.2d 70 (5th Cir. 1962)). The Fifth Circuit held, instead, that the Louisiana Supreme Court had found such expert witness fees were necessary and compensable as part of the

measure of just compensation in eminent domain proceedings, and were therefore "a substantive requirement of Louisiana law, a substantive right of the landowners, and binding upon this Court." *Id*. at 267 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). In distinguishing *Henning* from the case before it in *Kivi*, the Eleventh Circuit simply noted that the "entitlement to expert witness fees under Florida Statutes is not a substantive right" like the costs at issue in *Henning*. 695 F.2d at 1289.

But neither *Kivi* nor *Henning* answer the question of whether Defendants' claimed costs are compensable here. *Henning* involved the application of state law by virtue of the *Erie* doctrine in diversity cases.[21] And while cases like *Crawford* and *Kivi* make broad pronouncements concerning the limitation on taxing witness fees as costs to the losing party, they do not fit the context presented here.

This case is before this Court pursuant to its federal question jurisdiction under the Natural Gas Act and is subject to Federal Rule of Civil Procedure 71.1, which explicitly excludes application of Rule 54(d). Moreover, as this Court has already held, where a private company vested with the power of the state seeks to take property from private citizens for public use under the Natural Gas Act, the substantive law of the state where the condemnation action is brought applies to

---

[21] Moreover, Plaintiff points out that Fifth Circuit later called into question the logic employed in *Henning* in a subsequent eminent domain case in which the United States was the condemnor.

determine the measure of compensation. In Florida, just compensation includes expert witness fees and other costs.

In an analogous case, the Third Circuit Court of Appeals noted Pennsylvania law similarly allows for "recovery of professional fees such as appraisal, attorney, and engineering fees," in eminent domain actions, when it also held that state substantive law applied to determine the measure of compensation in a Natural Gas Act case. *See Tenn. Gas*, 931 F.3d at 245, 255. Though the Third Circuit did not state in exact terms that costs included in a given state's measure of compensation are compensable in a federal case notwithstanding limitations set by sections 1821 and 1920, the recognition that "professional fees" for appraisals and engineering are compensable inherently recognizes as much. Accordingly, this Court rejects Plaintiff's argument that sections 1821(b) and 1920 apply to bar taxation of certain costs in this case. Instead, Defendants' costs—including reasonable expert witness fees as provided for under Florida law—are a necessary component of the just compensation Plaintiff must pay for taking the Defendants' property pursuant to the Natural Gas Act.[22]

---

[22] If Plaintiff were to have its way, not only would it completely ignore Rule 71.1(l), it would effectively mean that Defendants' "just compensation" would essentially be cut in half based on the costs—including attorney's fees and expert witness fees—due for defending their case. More importantly, Plaintiff's proposed rule would lead to a dystopian David-and-Goliath scenario where the Government—by virtue of granting private entities the power to take property from private citizens and severely limiting those citizens' recoverable costs by operation of sections 1821 and 1920—hands private company "Goliaths" an impenetrable shield to deflect any resistance from small property owner "Davids." In future eminent domain cases that involve

## A. Reasonable Expert Witness Fees

The largest category of costs Defendants seek are expert witness fees. "[C]ondemning authorities are able to provide expert witnesses and appraisers, and if the defendant in condemnation proceedings is to be assured of full compensation[,] he should have the same tools available to him in a defense of his right." *Cheshire v. State Road Dep't*, 186 So. 2d 790, 791 (Fla. 4th DCA 1966). However, "[s]uch costs . . . are subject to the close scrutiny of the court for the purpose of determining that such costs are reasonable and were necessarily incurred in the defense of the proceeding[.]" *Id.* (citations omitted). Accordingly, "[t]o be recoverable, experts' fees must be reasonable, and the experts' services must have been necessary." *Garber v. State, Dep't of Transp.*, 687 So. 2d 2, 3 (Fla. 1st DCA 1996) (citing *Dade Cnty. v. Midic Realty, Inc.*, 549 So. 2d 1207 (Fla. 3d DCA 1989) and *Sarasota Cnty. v. Burdette*, 524 So. 2d 1064 (Fla. 2d DCA 1988)). Moreover, "such fees [must] be reasonably and necessarily incurred in relation to *a proper issue* in the case." *Leeds v. City of Homestead*, 407 So. 2d 920, 921 (Fla. 3d DCA 1981) (emphasis added) (citing *Hodges v. Div. of Admin., State, Dep't of Transp.*, 323 So. 2d 275 (Fla. 2d DCA 1975)).

---

lower-valued property, landowners would be less inclined to risk hiring an attorney and challenging a lowball offer, recognizing that they would be on the hook for fees and costs if they fought for their just compensation. This would have the deleterious effect of allowing—even incentivizing—private companies, vested with the power of the state, to strongarm small property owners into giving up their land for lower-than-fair-market value.

This Court must make specific findings justifying each award of expert witness fees. *State Dep't of Transp. v. Nassau Partners, Ltd.*, 878 So. 2d 1286, 1288 (Fla. 1st DCA 2004). Namely, this Court must list "the hours, rate, and total fee owed to each expert." *Id.*

Defendants claim separate amounts for each of their four experts; namely, (a) $43,435 in fees for Matthew Ray (real estate appraiser)—but Defendants are willing to discount his firm's fees by 10% to $39,091.50 as a "fair compromise," in light of revisions to Mr. Ray's opinion and the facts and circumstances of this case, ECF No. 281 at 59; (b) $10,117.87 in fees for Joshua Harris (real estate economist)—but in light of this Court's limitation on Dr. Harris's opinion and the facts and circumstances of this case, Defendants are willing to discount Dr. Harris's fees by 10% to $9,106.08, as a "fair compromise," ECF No. 280 at 62; (c) $9,000 in fees for Joseph Samnick (arborist)—but Defendants are willing to discount his fees by 20% to $7,200 as a "fair compromise" in light of this Court's limitation on his opinion regarding the individual values of trees and the facts and circumstances of this case, ECF No. 280 at 65 ; and (d) $17,611.32 in fees for Dr. Thomas Spreen (agricultural economist)—but in light of this Court's limitation on the specifics of Dr. Spreen's testimony and after several amendments to his expert report, Defendants are willing to reduce Dr. Spreen's fee by 20% to $14,089.06 as a "fair compromise," ECF No.

280 at 68. This Court will address each expert's fee in turn, along with Plaintiff's specific objections thereto and any reductions this Court deems appropriate.

### i. Matthew Ray—Real Estate Appraiser

In support of Defendants' claim for Mr. Ray's fees, Defendants attach declarations from Matthew Ray, ECF No. 267, and Andrew Brigham, ECF No. 280, providing details about the tasks Mr. Ray's firm performed, the connection those tasks had to Defendants' case, the rates Mr. Ray's firm charged, and the time his firm spent on each task. Mr. Ray, along with others at his firm, Cantrall Ray Real Estate ("CRRE"), billed a total of $43,435 in appraisal fees, which included revisions and amendments to Mr. Ray's expert report based on this Court's exclusion of certain aspects of his opinion. Plaintiff raises several objections to the requested fees—calling into question both the reasonableness of the time spent on the appraisal and the hourly rates charged by employees at CRRE.

Mr. Ray's appraisal was the result of work performed by three individuals. Matthew Ray performed 118.73 hours of work for $295/hour; Rikke L. Mihos performed 29.68 hours of work for $190/hour; and Sarah Pinkepank performed 9.55 hours of work for $190/hour. *See* ECF No. 267-3. Mr. Ray attests that these rates are within the range of reasonable rates charged by appraisers of similar experience. ECF No. 267 at 7. CRRE also invoiced $955.97 for out-of-pocket expenses for

mileage to inspect the property, comparable and paired sales, and the market area, and costs for mailings and attendance at the trial. *Id*. at 7, 9.

Plaintiff points out several billing errors in CRRE's earlier invoices—mistakes that Mr. Ray admits to in his declaration—and accuses Mr. Ray of making a "patently doubtful claim" that he worked 12 to 15.75 hours on 26 days, which were included in the corrected invoice. ECF No. 290 at 30. In so doing, Plaintiff urges this Court to find Mr. Ray's invoicing to be unreliable and reduce his firm's claimed fees by half.

Plaintiff also questions Ms. Mihos's and Ms. Pinkepank's claimed rates of $190/hour, asserting they were both research assistants until January and April 2018. *Id*. at 33. Ultimately, Plaintiff asks this Court to reduce the two appraiser's rates to a blended pre- and post-licensure rate of $150/hour, and award costs totaling only $20,454.60—representing a reduction of $18,636.90 from Defendants' proposed "compromise" fee of $39,091.50. This reduced amount excludes the out-of-pocket expenses as non-compensable absent any detail regarding the distance travelled for mileage. *Id*. at 33 (citing *Dep't of Transp. v. Skidmore*, 720 So. 2d 1125, 1130 (Fla. 4th DCA 1998) (holding it was an abuse of discretion for trial court to award travel expenses for experts whose records did not indicate whether they had to travel for trial or discovery purposes from out of state)).

As an initial matter, this Court agrees with Plaintiff regarding CRRE's claimed out-of-pocket expenses. Mr. Ray has not provided a detailed breakdown of these expenses, including mileage travelled, and the balance of which appears to consist of office expenses. Accordingly, in this Court's discretion, it will **exclude these expenses, totaling $955.97, from the final award of costs**. *See Skidmore*, 720 So. 2d at 1130 (noting an award of costs is left to the court's sound discretion, but office expenses such as, postage, should not be taxed as costs).

Contrary to Plaintiff's attacks on the reasonableness of the claimed fees, Defendants make a compelling case for the time expended by Mr. Ray's firm in preparing and defending Mr. Ray's appraisal at trial. This is most clearly reflected in the jury's rejection of Plaintiff's "zero damage" estimate in favor of a compensation award falling between Mr. Ray's opinion and the landowners' evaluation, and over ten times the last written offer before Defendants hired an attorney. *See* ECF No. 280 at 55. Further, Mr. Ray has adequately explained his exercise of billing judgment and correction of billing mistakes that Plaintiff previously objected to, ECF No. 267 at 7-8; accordingly, this Court finds much of the time Mr. Ray and associates expended, including 118.73 hours for Ray, 29.68 hours for Mihos, and 9.55 hours for Pinkepank, *see* ECF No. 267-3, was indeed necessary to put Defendants on equal footing with Plaintiff in this case. However, as this Court notes below, a reduction is necessary to account for unnecessary time

spent on matters that were excluded at trial. This Court finds a 20% reduction reasonably accounts for the portions of Mr. Ray's appraisal that were not considered "proper issues" at trial.

As to the reasonableness of the claimed hourly rates, this Court finds Mr. Ray's rate of $295/hour to be reasonable based on the materials Defendants have attached in support of their costs claim and the absence of any objection from Plaintiff.

Plaintiff objects to the $190/hour rate charged for Ms. Mihos and Ms. Pinkepank, but attaches no evidence to support the assertion that these individuals charged lower rates between 2015 and their licensures in 2018 or that another licensed CRRE appraiser charged $150-165/hour in other cases. On the other hand, Defendants provide no other evidence to support the claimed rates, aside from Mr. Ray's affidavit attesting to their reasonableness. *See* ECF No. 267 at 7.

This Court's own review of the CRRE invoice, ECF No. 281-5 at 8-10, yields a count of 38 time entries for Ms. Mihos and 20 time entries for Ms. Pinkepank, of which roughly half were logged after both individuals became licensed appraisers. Specifically, Ms. Mihos logged 18 time entries in 2018, for approximately 10.5 hours of post-licensure work. Of her total time, Ms. Mihos expended approximately 4.5 hours of apparently clerical work before she became licensed—including time entries for "research and organiz[ing] files," "organize file and client information,"

and "organize electronic files." *Id*. at 9. While this Court finds Ms. Mihos's present-day rate is appropriate and reasonable, this Court will exclude the 4.5 hours of clerical work Ms. Mihos performed while she was still a research assistant, for a total reasonable time expended of 25.18 hours and **a total fee of $4,784.20**.

Similarly, Ms. Pinkepank logged 11 of her 20 time entries after she became licensed in 2018. Nearly three-quarters of her time was incurred while she was a licensed appraiser, accordingly this Court finds her requested rate of $190 to be reasonable as well. But like Ms. Mihos, Ms. Pinkepank performed some clerical work early in the case that should be excluded from her fee award. Specifically, time entries for tasks like compiling and organizing files, "prepar[ing] mailings for verification," and "planning route and organizing info for confirmation/inspections," shall be excluded from the final award—a total of 1.1 hours. This leaves 8.45 hours of time reasonably expended in this case at a rate of $190/hour for **a total fee award for Ms. Pinkepank of $1,605.50**.

While Defendants assert a 10% reduction is a fair compromise in recognition of the time spent on matters that were ultimately excluded, this Court finds a 20% reduction is reasonable and necessary to reflect the limitations this Court imposed and work performed on "proper issues" in this case. For these reasons, Defendants' motion for costs with respect to appraisal fees is **GRANTED in part**. Combined with **Mr. Ray's total fee of $35,025.35**, comprising 118.73 hours of time at

$295/hour, the total fee award for Mr. Ray's appraisal, **reduced by 20%**, is **$33,132.04**.

## ii. <u>Joshua Harris—Real Estate Economist</u>

Defendants move to recover expert fees totaling $9,106.08 for Dr. Joshua Harris, taking into consideration a 10% reduction for court-imposed limitations on the scope of his testimony. ECF No. 283 at 28. In support of their motion, Defendants attach Dr. Harris's declaration, ECF No. 268, along with Mr. Brigham's declaration attesting to the work that Dr. Harris performed in assisting with the defense of this proceeding, ECF No. 280 at 59-62. Mr. Brigham describes Dr. Harris as a "real estate economist," who studied and testified to the impact that the presence of a natural gas pipeline would have on the value of real estate based on the behavior of market participants. *Id*. at 60. An invoice from Dr. Harris's firm, the Lakemont Group, shows that Dr. Harris billed for approximately 25.5 hours of work on this case, plus $570.70 in travel expenses for trial in Gainesville. ECF No. 281-5 at 11-13. Defendants also attach the affidavit of Timothy Savage, Ph.D. in economics and Clinical Assistant Professor of Real Estate at the NYU Schack Institute of Real Estate, in support of their claim for Dr. Harris's fees. ECF No. 269. Dr. Savage opines that based on his knowledge of Dr. Harris's background and experience, his claimed rate of $375 is reasonable compared to similarly qualified experts in the

field. *Id*. Further, Dr. Savage opines that the time Dr. Harris spent on this case was a reasonable number of hours to complete the assignment. *Id*.

Plaintiff objects to the request for Dr. Harris's fees, asserting his expert opinion was largely excluded at trial, and the balance of which he was permitted to testify about was essentially duplicative of Mr. Ray's appraisal testimony. ECF No. 290 at 34. But Plaintiff overstates its case. Though this Court limited Dr. Harris's testimony on the impact that a pipeline would have on the value of land, this Court did so to prevent Dr. Harris from testifying to direct quotes from materials he reviewed in reaching his opinions and from survey participants that he interviewed while formulating his report. *See* ECF No. 133. Nonetheless, this Court found Dr. Harris to be qualified to conduct the survey that he used in formulating his report and permitted him to testify to his ultimate opinion in the case. *Id*. Moreover, this Court agrees with Defendants that Dr. Harris served as a predicate expert for Mr. Ray's appraisal, who added context and understanding regarding the asserted negative impact that Plaintiff's pipeline would have on land value based on the perceptions of market participants. However, based on the court-imposed limitations on Dr. Harris's testimony, this Court finds that a 20% reduction in his total fee award is necessary to reasonably account for the evidence that was excluded at trial. .

Accordingly, this Court finds, based on the materials Defendants have provided in support of their motion, that Dr. Harris spent a reasonable amount of

time—approximately 25.5 hours—on this case and that his rate of $375/hour is reasonable given his qualifications and expertise, but that a 20% reduction in the overall fee is appropriate to reflect the limitation on Dr. Harris's testimony. And like this Court noted with respect to Mr. Ray's fees, Dr. Harris's travel expenses are properly excluded absent a breakdown with respect to mileage. *See Skidmore*, 720 So. 2d at 1130 (holding it was an abuse of discretion for trial court to award travel expenses for experts whose records did not indicate whether they had to travel for trial or discovery purposes from out of state)). Accordingly, Defendants' motion for costs as to Dr. Harris's expert fees is **GRANTED in part**, for **a total award of $7,637.74**.[23]

### iii. Joseph Samnik—Arborist

Defendants move to recover expert fees for Joseph Samnik, asserting a total invoice amount of $9,000 for 60 hours of work, but requesting a compromised fee of $7,200. ECF No. 283 at 28; *see also* ECF No. 281-5 at 16-17 (Samnik invoice). In support of this request, Defendants attach Mr. Samnik's declaration, *see* ECF No. 272, along with the affidavit of Ira Padgett, an ISA certified arborist with five years' experience who is currently employed with the City of Safety Harbor, ECF No. 276. Mr. Padgett attests that he is familiar with Mr. Samnik's experience, background,

---

[23] This amount reflects a 20% reduction from $9,547.17 in fees, minus $570.70 in travel expenses. *See* ECF No. 281-5 at 11.

and achievements and that Mr. Samnik's rate of $150 is reasonable. *Id*. This Court

agrees, based on the materials provided, that Mr. Samnik's hourly rate is reasonable.

Plaintiff asserts Mr. Samnik's fee award should be reduced to reflect the fact

that much of his opinion was excluded and his testimony limited at trial based on

this Court's ruling that he could not testify to the value of individual trees on the

subject property. ECF No. 290 at 35. Plaintiff proposes that this Court cut 27.75

hours related to work on the excluded portion of Mr. Samnik's opinion and apply an

additional 75% cut to remaining time entries to yield a total reduced fee award of

$3,093. *Id*. at 35-36.

This Court agrees that some reduction for time spent on individual tree values

is appropriate, as this Court previously deemed that to not be a "proper issue" in the

case. *See Leeds*, 407 So. 2d at 921. Specifically, in November 2017, this Court ruled

that Defendants could not seek damages for the value of individual trees that were

lost because of the pipeline construction. *See* ECF No. 76. Defendants and Mr.

Samnik agree that his opinion was limited by the exclusion of this evidence;

however, they urge this Court to find that the total time Mr. Samnik spent studying

the property, preparing his report, attending deposition, and preparing for and

testifying at trial was reasonably and necessarily incurred despite the limitation on

his testimony. *See* ECF Nos. 272 and 280 at 65. Even so, Defendants agree to a 20%

reduction in Mr. Samnik's fees—from $9,000 to $7,200—based on the exclusion of the individual-tree-value portion of his opinion.

This Court's review of Mr. Samnik's invoice, ECF No. 281-5 at 16-17, leads it to conclude that a reduction for time spent appraising the value of individual trees is appropriate. Mr. Samnik's expert report, ECF No. 64-5, lists three methods for appraising tree values—pursuant to Rule Chapter 14-40, the "Trunk Formula Method," and the "6" Replacement Tree" method—each of which is referenced in invoice entries for January 12, 2017, January 13, 2017, and January 16, 2017. *Compare* ECF No. 64-5 at 2 with ECF No. 281-5 at 16-17. The combined time spent on these individual tree value appraisals is 24.5 hours. Accordingly, Mr. Samnik's hours shall be reduced by 24.5 hours, yielding a balance of 35.5 hours. This Court finds this remaining time that Mr. Samnik spent on the case was reasonable and necessary to study the property, prepare and refine his report, further refine the issues at deposition, and testify at trial. This is true notwithstanding the excluded portion of Mr. Samnik's opinion. Accordingly, Defendants' claim for expert fees is **GRANTED in part** with respect to Mr. Samnik's services as an expert arborist in this case. This Court finds **$5,325**, representing 35.5 hours multiplied by $150/hour, to have been reasonably and necessarily incurred in the defense of this proceeding.

### iv. Thomas Spreen—Agricultural Economist

Defendants also move to recover expert fees for work that Dr. Thomas Spreen performed in this case, including a total invoiced amount of $17,611.32; however, Defendants assert that a 20% reduction is appropriate for the limitations placed on Dr. Spreen's testimony and seek a reduced fee award of $14,089.06. ECF No. 283 at 28, 34. Defendants attach the affidavit of Michael Martin, an attorney of 40 years, with "substantial experience in valuation of Agricultural lands." ECF No. 271. Mr. Martin attests to his familiarity with Dr. Spreen's background and experience, and having reviewed his invoices in this case, Mr. Martin opines that his claimed rates are reasonable and commensurate with similar rates charged in Mr. Martin's own cases. *Id*. Defendants also attach Mr. Brigham's declaration, which explains that he hired Dr. Spreen to provide an opinion on whether Plaintiff's pipeline easement would impact the use of the subject property for crop production, given that the property is a working farm. ECF No. 280 at 66.

Plaintiff objects to a majority of Dr. Spreen's claimed fees based on the numerous revisions he made to his report and this Court's limitation on his testimony, as well as the frequent travel Dr. Spreen charged for splitting his residency between Indiana and Florida, notwithstanding his place of business at the University of Florida in Gainesville. ECF No. 290 at 67-68. This Court agrees that it is inappropriate to hire a "local" expert and then charge Plaintiff for that expert's

travel to and from his out-of-state residence, accordingly, this Court will exclude Dr. Spreen's travel-related expenses.

Dr. Spreen provided seven invoices. *See* ECF No. 281-5 at 2. Based on this Court's review of the invoices, Dr. Spreen billed $1,162.5 for travel time to and from his home in Indiana to his home in Gainesville, along with $677.10 for his flight, and $149.54 in mileage and cab fares in April 2017. ECF No. 281-5 at 24. He also billed another $1,125 for travel time to and from Indiana and Gainesville, $109.54 for mileage and cab fares, and $670 for his flight in January 2018. *Id*. at 31. Dr. Spreen billed a third trip in March of 2018, for $1,275 for travel time, $195.98 for his flight from Indiana to Tampa, and $321.04 for rental car expenses. *Id*. at 38. Dr. Spreen's fourth trip in November 2018 included $1,125 for travel time, $689.50 for his flight, and $165.62 for rental car expenses and cab fare. *Id*. at 45. This all amounts to $7,665.82 in unnecessary travel expenses.

As for time incurred for work on "proper issues" in this case, this Court agrees that a reduction is necessary to exclude time spent on matters that this Court determined were inadmissible. This Court recognizes that it did not clarify its ruling about the admissibility of certain aspects of Dr. Spreen's opinion until September of 2018, after he had already put 50.25 hours of work in on his research and report, including attendance at depositions which helped refine the issues discussed in his report. Accordingly, this Court finds a 40% reduction is reasonable to reflect a

reduction of unnecessary work prior to September 2018. This leaves Dr. Spreen with 30.15 hours of time reasonably and necessarily incurred on his expert report prior to this Court's order on certain issues pertaining to compensable damages and admissibility of evidence, ECF Nos. 126 & 128. This time, along with four hours of research and preparation time in November 2018 at Dr. Spreen's $150 rate, and 2.75 hours of testimony time at Dr. Spreen's $225 rate, yields a reasonable **total fee award of $5,741.25.**[24]

### B. Fleming and England

Defendants seek $7,200 for the services performed by project manager and drone pilot, Ken Fleming, ECF No. 23 at 28, and a compromised fee amount of $2,400 for GIS mapping consultant, Bradley England, and his company, Terra Alta Group, *id*. Defendants attach declarations and attachments by Andrew Brigham, ECF No. 280, Mr. Fleming, ECF No. 275, and Mr. England, ECF No. 273, in support of these claimed costs. Defendants also provide the affidavit of Shawn Barnett, a certified GIS executive with 30 years' experience, who attests that Mr. England's rate of $100 for work performed is reasonable given his certification and experience. ECF No. 274. This Court will address each claim for costs in turn, starting with Mr. England.

---

[24] This includes 34.15 hours billed at $150/hour, plus 2.75 hours billed at $225/hour. This Court excludes the $8 billed for courthouse parking as another "cost of doing business."

## ii. Bradley England/Terra Alta Group

Defendants engaged Bradley England and his company, Terra Alta Group, for GIS services as a predicate for Mr. Ray's appraisal. ECF No. 280 at 69. Reasonable costs include reasonable expert fees charged by Defendants' appraiser as well as fees incurred by predicate experts, the opinions of which the appraiser relies upon in making his or her appraisal. *See Garber*, 687 So. 2d 2. Here, Mr. England is a GIS consultant with 21 years of experience in mapping, who prepared scores of exhibits from aerial photographs, which were put to useful purposes in Mr. Ray's appraisal, at mediation, and during the trial in this case. *Id*. at 69-70. Mr. England invoiced $2,650 in fees for the services he and his firm performed for Defendants. ECF No. 283 at 28. Mr. England's hourly rate is $100, which this Court finds reasonable for a GIS consultant of his background and experience. *See* ECF No. 274 (opining that Mr. England's $100 rate is reasonable).

Mr. England performed a total of 26.5 hours of work on creating maps for use in Mr. Ray's appraisal and as exhibits at trial in this case; however, Defendants acknowledge that a two-and-a-half-hour reduction is appropriate to account for work Mr. England performed on mapping information for Defendants' expert witnesses which this Court later deemed inadmissible at trial. ECF No. 280 at 71. Accordingly, Defendants have agreed to reduce their costs claim by $250 to account for this time, resulting in a compromised cost claim of $2,400 in fees for work that Mr. England

and his company performed. *See* ECF No. 280 at 71. Plaintiff poses no objection to this reduced amount. ECF No. 290 at 38. For these reasons, this Court finds Mr. England's services were necessary to place Defendants on equal footing with Plaintiff and served as a useful predicate for Defendants' expert opinions. Defendants' motion for costs is **GRANTED** as to the claim for **$2,400** for work performed by Bradley England and the Terra Alta Group.

## ii. Ken Fleming

Defendants also move to recover costs for services that Ken Fleming performed to assist Mr. Ray with his appraisal and his rebuttal of Plaintiff's expert's appraisal. ECF No. 275 at 1. Mr. Brigham's declaration states that Ken Fleming is a project manager with Mr. Brigham's law firm and a certified drone pilot. ECF No. 280 at 72. Defendants are seeking costs for 48 hours of Mr. Fleming's time taking ground and aerial photographs, both of the subject property, and of sales considered by Plaintiff's and Defendants' appraisers *Id*. at 73-74. These photographs were created for use as exhibits during the trial in this case, of which Defendants assert over 100 were admitted into evidence. *Id*. at 74-75. Defendants agree to reduce Mr. Fleming's usual rate of $195/hour to $150/hour and seek $7,200 for the work he performed in this case.

Plaintiff objects to any award for Mr. Fleming's services for several reasons. The primary contention is that Mr. Fleming's work is duplicative of work performed

by Bradley England and the Terra Alta Group. ECF No. 290 at 39. Additionally, Plaintiff takes issue with the fact that Mr. Fleming is an employee of defense counsel's law firm and the work he performed as part of that employee relationship should be categorized as either pre-judgment, paralegal work encompassed by the "benefits achieved" fee award or non-compensable overhead expenses that Defendants cannot claim as recoverable costs. *Id*. at 40-41. Plaintiff also disputes the number of Mr. Fleming's exhibits that were admitted at trial, alleges Mr. Fleming engaged in "questionable billing" practices, and points out that he did not become an FAA-certified drone pilot until April 2018. *Id*.

Defendants go to great lengths to explain why Mr. Fleming's services were distinct from Mr. England's, and yet, still necessary to place Defendants on equal footing with Plaintiff at trial. ECF No. 280 at 72-79; ECF No. 275. Mr. Brigham explains that Mr. Fleming's aerial and ground photographs differed from the publicly-sourced information Mr. England used to create maps for Mr. Ray's appraisal, as Mr. Fleming's photographs were used to show the jury the "aesthetic qualities" of the property at issue, both before and after the taking. ECF No. 280 at 77-78. On the other hand, Mr. England's mapping provided "flat aerial" views, useful in demonstrating boundaries, the location of easements, and for measuring distances and areas. *Id*. Essentially, Mr. England's maps provided a view of the

"forest," while Mr. Fleming's photographs captured the beauty of the individual "trees."

But while Mr. England served essentially as a predicate expert in GIS mapping to support the preparation of Mr. Ray's appraisal and testimony at trial, Mr. Fleming is held out as an employee of the law firm hired to defend this case. This Court agrees with Plaintiff to the extent that Mr. Fleming's services, though adding value to the Defendants' case and certainly helpful in demonstrating the value of the subject property, is properly accounted for already under the "benefits achieved" fee award. The fact that Mr. Fleming did not testify, on its own, "does not preclude the award of a reasonable fee." *Sarasota Cnty. v. Burdette*, 524 So. 2d 1064, 1066 (Fla. 2d DCA 1988). However, he "was not hired as an expert witness, but to assist the landowner[s'] attorney in the litigation," nor was his function "to render an opinion on just valuation." *State, Dep't of Transp. v. Woods*, 633 So. 2d 94, 95 (Fla. 4th DCA 1994). Defendants' costs claim appears to be shifting the overhead expenses of Mr. Brigham's firm by charging the costs of a non-attorney or paralegal employee's trial preparation services to Plaintiff under the guise of litigation costs. Taxing general overhead expenses as costs in an eminent domain case is improper. *Chandrinos*, 816 So. 2d at 1246; *see also Skidmore*, 720 So. 2d at 1130 (noting computer research costs are "overhead" and not compensable as costs). Accordingly, Defendants' claim of $7,200 for Mr. Fleming is **DENIED**.

### C. Printing Costs

Defendants seek $10,163.10 for copying and exhibit printing costs incurred from Copy Right, "a litigation support and printing company." ECF No. 283 at 28, 34-35. Defendants assert these costs are "[o]verwhelmingly . . . traceable to board-mounted exhibits entered into evidence or used for demonstrative purposes at trial." *Id*. at 35. Such costs are taxable so long as they are reasonable. *See Orlando Reg'l Med. Ctr. v. Chmielewski*, 573 So. 2d 876, 883 (Fla. 5th DCA 1990), *abrogated on other grounds by Boulis v. Fla. Dep't of Transp.*, 733 So. 2d 959 (Fla. 1999).

Plaintiff agrees to prorated copying costs included under two of four invoices, totaling $296.80; however, Plaintiff asserts costs from a third invoice should be completely excluded as they relate to copies used only in mediation, and costs from the fourth invoice should be reduced to account for only those copies of exhibits that were actually admitted at trial, instead of including costs for pricey demonstrative aids. *See* ECF No. 290 at 42-44; *see also* ECF No. 281-5 at 3 (listing invoice numbers and corresponding costs). Ultimately, Plaintiff asks this Court to reduce the $10,163.10 in copying costs to a total award of $462.41. *Id*. at 44. However, Plaintiff acknowledges that this Court may find some expenses for demonstrable aids to be taxable and proposes that a reasonable amount for such costs is $2,070. *Id*. at n.25.

This Court agrees with Plaintiff that Defendants' expenses for printing documents used at mediation should not be taxed as costs—instead, these charges

are properly subsumed as overhead expenses. This Court also agrees, to an extent, that over $9,000 in fees for printing dozens of demonstrative aids for trial appears to be excessive. It is impossible to determine with precision the usefulness of such exhibits and aids at trial, or whether, after a number of these aids were shown to the jury, they began to provide diminishing returns with respect to persuading or educating the jury regarding the value of the subject property. Instead, this Court agrees with Plaintiff that a reduction in the amount claimed for printing demonstrative aids for necessary use at trial is appropriate to arrive at a reasonable cost. Accordingly, this Court adopts Plaintiff's proposed reduction from $9,025.28 to $2,070, representing costs for one-third of Defendants' demonstrative aids invoiced at $90 for 24x36" foam boards.

Accordingly, in sum, Defendants' cost claim for printing costs is **GRANTED in part** for **a total award of $2,366.81**.[25]

### D. Miscellaneous Expenses

Finally, Defendants' move for $1,861.17 in costs for "miscellaneous expenses." ECF No. 283 at 28. Specifically, Defendants seek costs for hotel rooms for four individuals during the trial in this case. *See* ECF No. 281-5 at 4. This Court is persuaded by the First District Court of Appeal's interpretation that attorneys'

---

[25] This represents a total of $296.80 for invoice #s 40828 and 43970 and costs for invoice # 44298 reduced to $2,070. *See* ECF No. 281-5 at 3.

travel expenses are not the sort of costs that should be taxed to the condemning authority in eminent domain actions, and instead "represent litigation expenses voluntarily incurred by [Defendants] who elected to employ counsel to represent them who lived a considerable distance from the city in which the case was being litigated." *Plante v. Canal Auth.*, 218 So. 2d 243, 248 (Fla. 1st DCA 1969). Accordingly, Defendants' motion for costs is **DENIED** as to travel and hotel expenses amounting to $1,861.17.

## VI. Conclusion

For the reasons set out above,

**IT IS ORDERED**:

1. Defendants' motion for attorney's fees and costs, ECF No. 283, is **GRANTED in part** and **DENIED in part**.

2. Defendants are entitled to "benefits achieved" attorney's fees, under section 73.092(1), Florida Statutes, totaling **$220,391** as a component of Defendants' full compensation.

3. Defendants' motion for pre-trial supplemental proceeding fees pursuant to section 73.092(2), Florida Statutes, is **DENIED**.

4. Defendants are entitled to post-trial supplemental proceeding fees, pursuant to section 73.092(2), Florida Statutes, totaling **$66,192.50.**

5. Defendants are entitled to appellate fees, pursuant to section 73.131, Florida Statutes, totaling **$99,982.50** for **121.1 hours** of work that attorneys Brigham and Copeland performed, and **78.95 hours** that attorneys Hearne, Davis, T. Belz, and M. Belz performed.

6. Defendants are entitled to taxable costs, pursuant to section 73.091, Florida Statutes, as a component of their full compensation, including the following:

a. **$5,619.50** for court reporting services;

b. **$3,827.36** for 25.18 hours, payable at $190/hour, reduced by 20%, for Ms. Mihos;

c. **$1,284.40** for 8.45 hours, payable at $190/hour, reduced by 20%, for Ms. Pinkepank**;**

d. **$28,020.28**, for 118.73 hours, payable at $295/hour, reduced by 20%, for Mr. Ray;

e. **$7,637.74**, for 25.5 hours, payable at $375/hour, followed by a 20% reduction in the total amount of $9,547.17 for Dr. Harris;

f. **$5,325**, representing 35.5 hours multiplied by $150/hour, for Mr. Samnik;

g. **$5,741.25**, representing 34.15 hours billed at $150/hour, plus 2.75 hours billed at $225/hour, for Dr. Spreen;

h. **$2,366.81** for printing costs; and

i. **$2,400**, representing 24 hours billed at $100/hour, for Bradley England and the Terra Alta Group.

7. Defendants' motion for costs, ECF No. 283, as it pertains to Ken Fleming's fees and miscellaneous expenses is **DENIED**.

8. The Clerk shall enter judgment for fees and costs stating, "Defendants are entitled to judgment against Plaintiff in the amount of **$386,566** in attorneys' fees, and **$62,222.34** in costs, for a total judgment amount of **$448,788.34**, for which sum let execution issue."[26]

9. This Court recognizes that a motion to tax interest, ECF No. 289, remains pending. This Court will address that motion by separate order.

**SO ORDERED on May 11, 2021.**

> **s/Mark E. Walker**
> **Chief United States District Judge**

---

[26] The Clerk previously entered an amended judgment, ECF No. 198, reflecting the jury's verdict that Plaintiff must pay Defendants $861,264. Plaintiff has satisfied this judgment by paying the required amount into the court registry. *See* ECF Nos. 221, 222, & 223.